IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re | § | Chapter 11 |
| | § | |
| XTREME POWER INC., *et al.* | § | Case No. 14-10096 |
| | § | |
| Debtors. | § | Joint Administration |
| | § | Requested |

**EMERGENCY MOTION OF DEBTORS FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND SETTING FURTHER AND FINAL HEARINGS ON REQUEST FOR USE OF CASH COLLATERAL**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

NOW COMES Xtreme Power Inc., et. al[1], the Debtors and Debtors-in-Possession in these Chapter 11 Proceedings, and files this Emergency Motion of Debtors for Interim Order Authorizing Use of Cash Collateral and Setting Further and Final Hearings on Request for Use of Cash Collateral, and in support thereof would show the Court the following:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the subject matter of the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**PROCEEDURAL BACKGROUND**

2. On January 22, 2014 (the "Petition Date"), voluntary petitions for relief under

---

[1] The jointly administered debtors include: Xtreme Power Inc., Xtreme Power Systems, LLC, and Xtreme Power Grove, LLC.

Motion for Use of Cash Collateral            Page 1

Chapter 11 of the United States Bankruptcy Code were filed by the Debtor. Requests for joint administration have been filed. No Trustee, examiner, or official committee of unsecured creditors have been appointed.

## BACKGROUND AND HISTORY OF THE DEBTORS

3.  Xtreme Power Inc. ("XPI"), Xtreme Power Systems, LLC ("XPS"), and Xtreme Power Grove, LLC ("XPG") (collectively referred to as "Debtors"), were formed in 2006 in order to create a business focused on the design, engineering, installation, and monitoring of integrated energy storage systems for power generators, grid operators and commercial & industrial end users, among others. The Debtors are established and experienced leaders in the energy storage industry with over 240,000 hours of field operation and more than 5 GWh charged and discharged across its 77 MW of grid-scale installations. The Debtors specialize in more than ensuring the battery and energy storage source seamlessly operates with the Power Conversion System – they are systems specialists, well-versed in ensuring integrated systems respond to and communicate with the grid and other external inputs as required by their customers. These operations have enabled the Debtors to become one of the world's leading grid-scale power control technology provider capable of integrating the full spectrum of energy generation sources and battery technologies.

## ORGANIZATIONAL STRUCTURE

4.  The Debtors are Xtreme Power Inc. ("**XPI**"), Xtreme Power Systems, LLC ("**XPS**"), and Xtreme Power Grove, LLC ("**XPG**") (collectively referred to as "**Debtors**" or "**Xtreme Power**"). XPI (a Delaware Corporation) is 100% owner of XPS (a Texas Limited

Liability Company), and XPG (a Delaware Limited Liability Company). XPI also owns 25% of XDT, LLC (a Delaware Limited Liability Company), which is a non operating company and is not a Debtor.

## CURRENT FINANCIAL SITUATION

7. Debtor XPS has only a very small amount of cash collateral and the other Debtors have virtually none. The Debtors' operations in Chapter 11 will be financed primarily through the DIP loan from Horizon Financial. The only other entity with an interest in XPS's cash collateral is Silicon Valley Bank. Debtors believe that Silicon Valley Bank will consent to its use of its cash collateral, but if it will not, requests that the Court permit it to use such cash collateral. The Debtor requires the ability to use cash and the proceeds of existing Accounts receivable (the "Cash Collateral") to maintain the operation of its businesses and preserve its value as a going concern. These essential items, however, constitute part of the collateral for the loans made to the Debtor under the Prepetition Loan Documents with SVB, and, therefore, may not be used in support of the Debtor's ongoing business activities absent compliance with Section 363 of the Bankruptcy Code. Without authorization to use the Cash Collateral under Section 363(c)(2)(B) of the Bankruptcy Code, the Debtor would be left without a small, but important, source of working capital.

## RELIEF REQUESTED

8. The Debtor requires immediate authorization of this Court to use its Cash Collateral in Order to continue operating its business and preserve their value for the benefit of all creditors, if SVB does not consent to such use. A copy of the Debtor's budget, reflecting

financing sufficient to fund losses until the business is fully operational, is attached to the proposed interim DIP order. By having immediate access to cash collateral that is needed to enable the Debtor to operate its business, the Debtor's Prepetition Collateral will be preserved and enhanced. Even after the DIP Facility is in place, use of Cash Collateral (including cash generated from the collection of accounts receivable) will be a small but important source of the working capital that will be used to operate the Debtor's business and, thereby, preserve and enhance the value of its estate.

9. The Debtor will seek the voluntary agreement of SVB for the use of Cash Collateral.

10. The Debtors require the use of cash collateral to maintain ongoing operations. Debtors request that they be allowed to use cash collateral in accordance with the Budget on terms and conditions approved by this Court after a hearing.

**THE DEBTORS SHOULD BE AUTHORIZED TO USE CASH COLLATERAL IN WHICH ITS SECURED CREDITOR ASSERTS AN INTEREST**

11. Section 363(c) of the Bankruptcy Code provides that a debtor may use cash collateral if all interested entities consent or the court, after notice and a hearing, authorizes such use. 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code requires that the use of cash collateral be prohibited or conditioned as is necessary to provide *adequate protection* to persons that have an interest in cash collateral. 11 U.S.C. § 363(e) (emphasis added); *In re DeSardi,* 340 B.R. 790, 797-98 (Bankr. S.D. Tex. 2006) ("Adequate protection is . . . grounded in the belief that secured creditors should not be deprived of the benefit of their bargain."). Read together, sections 363(c) and (e) of the Bankruptcy Code authorize a debtor to use the cash collateral of a

secured creditor if a court determines that such creditor's collateral is adequately protected. *See In re Certified Corp.*, 51 B.R. 768, 770 (Bankr. D. Haw. 1985) ("It is well established that a debtor is entitled to use cash collateral upon proof of adequate protection.").

12. Although the term "adequate protection" is not precisely defined in the Bankruptcy Code, Section 361 sets forth three non-exclusive examples of what may constitute adequate protection: (1) periodic cash payments equivalent to decrease in value; (2) an additional or replacement lien on other property; or (3) other relief that provides the indubitable equivalent of an entity's interest in the property. *In re Timbers of Inwood Forest Associates, Ltd.*, 793 F.2d 1380, 1388 (5th Cir. 1986), *aff'd*, 484 U.S. 365 (1988); *In re Curtis*, 9 B.R. 110, 111-12 (Bankr. E.D. Pa. 1981). "[T]he debtor-in-possession has the burden of proof on the issue of adequate protection." *In re Cafeteria Operators, L.P.*, 299 B.R. 400, 406 (Bankr. N.D. Tex. 2003).

13. Here, the Debtors seek an order of this Court authorizing it to use cash collateral in which SVB asserts an interest (the "Cash Collateral") pursuant to Section 363 of the Bankruptcy Code, in order to pay ordinary expenses relating to ongoing operations of the Debtors' business.

### Adequate Protection Offered to Lender

14. **Equity Cushion**. The existence of an "equity cushion" or a "value cushion"— the value of the collateral in excess of the amount of the secured claim at issue—"is the classic form of protection for a secured debt," and it is well settled that "the existence of an equity cushion, standing alone, can provide adequate protection." *Pistole v. Mellor (In re Mellor)*, 734

F.2d 1396, 1400 (9th Cir. 1984). *Accord, Travelers Ins. Co. v. Plaza Family P'ship (In re Plaza Family P'ship)*, 95 B.R. 166 (E.D. Cal. 1989).

15. In this case, the Debtor has a "stalking horse" buyer who proposes to purchase the Company in 38 days, and as part of the consideration for the transaction will pay SVB's claim in full.

16. **Continued Operations**. In addition to the foregoing, SVB's interest in Cash Collateral is further protected because the Debtors will use the Cash Collateral to pay for the ordinary and necessary expenses of maintaining and operating their business (as detailed in the Budget), thereby preserving the value of SVB's collateral. Such expenditures are expected to result in the preservation of the value of the Debtors' operations and a continued stream of cash receipts from operations, thus providing adequate protection to SVB. *See In re McCombs Properties VI, Ltd.,* 88 B.R. 261, 267 (Bankr. C.D. Cal. 1988) (finding that by committing cash collateral to pay operating expenses and to improve and maintain the property, the debtor has substantially eliminated the risk of diminution of the secured creditor's interest in the cash collateral).

16. **Adequate Protection Payments**. Finally, the Debtors' have budgeted and propose to pay to Silicon Valley Bank a monthly adequate protection payments equal to the amount if interest accruing on the loans, which is approximately $2,000.

17. Based on the foregoing, SVB's Cash Collateral interests will be adequately protected by the Debtors' proposed use of Cash Collateral. Accordingly, the Debtors submit that this Court should grant the Motion if SVB will not grant its consent.

## Request For Immediate Interim Relief

29. Bankruptcy Rule 4001(b) permits a court to approve the use of Cash Collateral during the 15-day period following the filing of a motion "only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bank. P. 4001(b)(2). Here, the Debtors require immediate access to Cash Collateral for the payment of necessary operating expenses. If such interim relief is not obtained, the Debtors submit that their efforts to administer their estates for the benefit of all creditors and parties in interest will be immediately and irreparably jeopardized. Accordingly, the Debtors request that, pending a final hearing on the Debtors' Motion to Use Cash Collateral, the Court authorizes the Debtors to immediately use the Cash Collateral pursuant to the Budget.

## Notice of Motion

30. Notice of this Motion has been provided by facsimile, e-mail, overnight delivery and/or hand delivery in compliance with the Local Rules of the Western District of Texas, including:

(a)  all Prepetition Secured Lenders;
(b)  20 largest unsecured creditors of each of the Debtors;
(c)  Horizon;
(d)  the U.S. Trustee's Office;
(e)  the Securities and Exchange Commission;
(f)  the Internal Revenue Service; and
(g)  other government agencies, national, state and local, to the extent required by the Bankruptcy Code, Bankruptcy Rules or Local Rules.

The Debtors believe that the notice provided for herein is fair and adequate and no other or further notice is necessary.

_____
Motion for Use of Cash Collateral           Page 7

## CONCLUSION

For the reasons set forth above, the Debtor respectfully requests that the Court: (a) enter an interim order authorizing the Debtors to use SVB's Cash Collateral in accordance with the Budget; (b) schedule a final hearing regarding the Debtor's ongoing use of Cash Collateral.

Respectfully submitted,

*JORDAN, HYDEN, WOMBLE, CULBRETH & HOLZER, P.C.*

/s/ Nathaniel Peter Holzer
Shelby A. Jordan
Texas Bar No. 11016700
100 Congress Ave. Suite 2109
Austin, TX 78701
Telephone:  (512) 469-3537
Facsimile:    (361) 888-5555

Nathaniel Peter Holzer
Texas Bar No. 00793971
500 North Shoreline Dr. Suite 900
Corpus Christi, Texas 78401-0341
Telephone:  (361) 884-5678
Facsimile:    (361) 888-5555

Antonio Ortiz
Texas Bar No. 24074839
1534 E. 6th Street, Suite 104
Brownsville, Texas 78520
Telephone:  (956) 542-1161
Telecopier:  (956) 542-0051

**PROPOSED ATTORNEYS FOR DEBTORS**