IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re | § | Chapter 11 |
| | § | |
| XTREME POWER INC., *et al.* | § | Case No. 14-10096 |
| | § | |
| Debtors. | § | Joint Administration Requested |
| | § | |

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS
105(a), 362(d), 363(b), 363(c) AND 503(b) FOR AUTHORIZATION TO
(A) CONTINUE THEIR WORKERS' COMPENSATION, LIABILITY,
PROPERTY, HEALTH, AND OTHER INSURANCE PROGRAMS, (B) PAY ALL
OBLIGATIONS IN RESPECT THEREOF (C) CONTINUE PREMIUM FINANCING
AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS FOR CASUALTY, LOSS,
AND LIABILITY INSURANCE, AND (D) EXTEND CERTAIN COVERAGE**

COMES NOW the above-captioned debtors and debtors in possession (the "Debtors") and file this Debtors' Motion Pursuant to Bankruptcy Code Sections 105(a), 362(d), 363(b), 363(c) and 503(b) for Authorization to (A) Continue Their Worker's Compensation, Liability, Property, Health, and Other Insurance Programs, (B) Pay All Obligations in Respect Thereof, (C) Continue all Premium Financing Agreements in the Ordinary Course of Business, for Casualty, Loss, and Liability Insurance; and (D) Extend Certain Coverage (the "Motion"). In support of this Motion, the Debtors state as follows:

I. **JURISDICTION AND VENUE**

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1408. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory predicates for the relief sought herein are sections 105, 362, 363 and 503 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II. BACKGROUND

### A. The Debtors' Businesses

3. Xtreme Power Inc. ("XPI"), Xtreme Power Systems, LLC ("XPS"), and Xtreme Power Grove, LLC ("XPG") (collectively referred to as "Debtors"), were formed in 2004 in order to create a business focused on the design, engineering, installation, and monitoring of integrated energy storage systems for power generators, grid operators and commercial & industrial end users, among others. The Debtors are established and experienced leaders in the energy storage industry with over 240,000 hours of field operation and more than 5 GWh charged and discharged across its 60 MW of grid-scale installations. The Debtors are systems specialists, well-versed in ensuring integrated systems respond to and communicate with the grid and other external inputs as required by their customers. These operations have enabled the Debtors to become one of the world's leading grid-scale power control technology provider capable of integrating the full spectrum of energy generation sources and battery technologies.

### B. The Debtors' Insurance Programs

4. The Debtors request, pursuant to Bankruptcy Code sections 105(a), 362(d), 363(b), 363(c), and 503(b), authority, but not direction, to continue and extend various Insurance Programs (as defined below) uninterrupted and to honor their undisputed pre-petition obligations thereunder (the "Insurance Obligations") in the ordinary course of business.

5. In connection with the operation of their businesses, the Debtors maintain workers' compensation, general liability, and property insurance programs, which provide insurance coverage for claims relating to, among other things, workers' compensation,

Insurance Coverage 2

automobile losses and liability, directors' and officers' liability, fiduciary liability, and general liability, life medical, and disability (the "Insurance Programs") through several different insurance carriers (the "Insurance Carriers") including, but not limited to, the Insurance Programs and Insurance Carriers as follows:

- Chubb Insurance - Property, Worker's Compensation & Other Corporate policies
- AIG First Insurance -- Products and Pollution Liability
- Chubb -- D&O
- BlueCross/BlueShield Ins – Employee Medical
- Principle Life Insurance – Employee life
- Mutual of Omaha – life, long term disability, AD&D voluntary supplemental life and short term disability
- Kaiser – Employee medical (Hawaii)

6. The Debtors are required to pay, either directly or through the Debtors' insurance brokers, premiums in connection with the Insurance Programs noted above (collectively, the "Insurance Premiums"). The Insurance Premiums are based on a fixed rate established and billed by each Insurance Carrier. The premiums for most of the Insurance Programs are determined annually and are either paid at the inception of each policy or are financed though insurance policy premium financing. Debtors owe premiums or premium financing payments under the Insurance Programs on the Petition Date, which are due now, of approximately $210,000.00. Other amounts will come due in the future and Debtors seek authority to pay those sums as well, including but not limited to purchase of a one year tail for the D&O Policy that expires in March. The Debtors seek authorization to satisfy these obligations as they become due.

7. Out of an abundance of caution, the Debtors also seek authorization pursuant to Bankruptcy Code section 363(c) to renew the Insurance Programs in the ordinary course of business.

### III. RELIEF REQUESTED

**A. Cause Exists to Authorize the Continuation of the Debtors' Insurance Programs and the Payment of the Debtors' Insurance Obligations**

8. Pursuant to Bankruptcy Code section 503(b)(1), a debtor may incur, and the court, after notice and a hearing, shall allow as administrative expenses, among other things, "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1). In addition, pursuant to Bankruptcy Code section 363(b), a debtor may, in the exercise of its sound business judgment and after notice and a hearing, use property of the estate outside of the ordinary course of business. 11 U.S.C. § 363(b). Bankruptcy Code section 105(a) further provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). The Debtors submit that the use of the estates' funds to pay the Insurance Obligations is permitted by Bankruptcy Code sections 503(b)(1), 363(b), and 105(a) as necessary costs of preserving the estates.

9. The Debtors believe that most if not all of their obligations under their Insurance Programs are post-petition obligations of the Debtors' estates. However, with respect to those Insurance Obligations that may be pre-petition claims, payment of such obligations is necessary and appropriate, and may be authorized under Bankruptcy Code sections 363(b) and 105(a)

pursuant to the "doctrine of necessity." The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical pre-petition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 490 (Bankr. N.D. Tex. 2002) (holding that a court may authorize payment of pre-petition claims if, among other things, dealing with the claimant is virtually indispensable to the preservation of the estate); *see also In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of pre-petition claims if such payment is essential to continued operation of the debtor); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that Bankruptcy Code section 105(a) "provides a statutory basis for the payment of pre-petition claims" under the doctrine of necessity and noting that the Supreme Court accepts the authority of the bankruptcy court "to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) (authorizing the payment of pre-petition employee wages and benefits while recognizing the judicial power to "authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor"). The rationale for the "doctrine of necessity" is consistent with the paramount goal of chapter 11 – "facilitating the continued operation and rehabilitation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176. Accordingly, pursuant to Bankruptcy Code sections 105(a) and 363(b), this Court is empowered to grant the relief requested herein.

10. The nature of the Debtors' businesses and the extent of their operations make it essential for the Debtors to maintain their Insurance Programs on an ongoing and uninterrupted basis. The non-payment of any premiums, deductibles, or related fees under any of the Insurance

Programs could result in one or more of the Insurance Carriers terminating their existing policies, declining to renew their insurance policies, or refusing to enter into new insurance agreements with the Debtors in the future.

11. The retention of the Debtors' qualified and dedicated senior management is also linked to the continued effectiveness of the directors' and officers' liability insurance policies.

12. In addition, pursuant to the guidelines (the "U.S. Trustee Guidelines") established by the United States Trustee (the "U.S. Trustee"), the Debtors are obligated to remain current with respect to certain of their primary Insurance Programs. Should any insurance policy lapse during the pendency of the Debtors' chapter 11 cases, the U.S. Trustee Guidelines mandate that the Debtors forward proof of policy renewal to the U.S. Trustee. Therefore, the continuation and renewal of the Insurance Programs, on an uninterrupted basis, and the payment of all pre-petition and post-petition Insurance Obligations arising under the Insurance Programs, is not only essential to preserve the Debtors' businesses and the value of the Debtors' estates for all creditors, but also compulsory pursuant to the U.S. Trustee Guidelines.

13. Accordingly, the Debtors seek authority, pursuant to Bankruptcy Code sections 503(b)(1), 363(b), and 105(a), to honor their Insurance Obligations and continue their Insurance Programs uninterrupted, as such programs were in effect as of the Petition Date. The Debtors submit that payment of obligations due or arising under or related to these Insurance Programs will be paid in the ordinary course of business and in accordance with the terms of these programs and policies and in a manner consistent with pre-petition practices.

14. The Debtors respectfully submit that renewal of the Insurance Policies and entry into insurance premium financing agreements should be authorized pursuant to Bankruptcy Code section 363(c) as actions in the ordinary course of the Debtors' businesses.

15. Numerous courts have granted similar requests for relief in other large chapter 11 cases.[1]

### IV. RESERVATION OF RIGHTS

16. Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under Bankruptcy Code section 365. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently. Finally, the relief requested herein shall not oblige the Debtors to accept any services, to accept the shipment of goods, or prevent the Debtors from returning or rejecting goods.

### V. THE DEBTORS SATISFY BANKRUPTCY RULE 6003

17. Bankruptcy Rule 6003 provides that to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may approve a motion to pay a pre-petition claim. Fed. R. Bankr. P. 6003. Here, the relief requested is necessary to avoid immediate and irreparable harm to the Debtors' estates for the reasons set forth above, and the Debtors accordingly submit that Bankruptcy Rule 6003 has been satisfied.

### VI. WAIVER OF BANKRUPTCY RULE 6004

---

[1] *See, e.g., In re Bombay Co., Inc.*, Case No. 07-44084 (DML) (Bankr. N.D. Tex. Sept. 20, 2008); *In re Semcrude, L.P.*, Case No. 08-11525 (BLS) (Bankr. D. Del. July 23, 2008); *In re Superior Offshore Int'l, Inc.*, Case No. 08-32590 (WWS) (Bankr. S.D. Tex. June 16, 2008); *In re Home Interiors & Gifts, Inc.*, Case No. 08-31961 (BJH) (Bankr. N.D. Tex. June 2, 2008); *In re Sharper Image Corp.*, Case No. 08-10322 (KG) (Bankr. D. Del. Feb. 20, 2008); *In re Charys Holding Co.*, Case No. 08-10289 (BLS) (Bankr. D. Del. Feb. 15, 2008).

18. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### VII. CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form filed with this Motion (a) granting the Motion, and (b) granting such other and further relief as the Court deems appropriate.

Dated: January 22, 2014.

Respectfully Submitted,

***JORDAN, HYDEN, WOMBLE, CULBRETH & HOLZER, P.C.***

*/s/ Nathaniel Peter Holzer*
Shelby A. Jordan
Texas Bar No. 11016700
100 Congress Ave. Suite 2109
Austin, TX 78701
Telephone: (512) 469-3537
Facsimile: (361) 888-5555

Nathaniel Peter Holzer
Texas Bar No. 00793971
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX 78401-0341
Telephone: (361) 884-5678
Facsimile: (361) 888-5555

Antonio Ortiz
Texas Bar No. 24074839
1534 E. 6th Street, Suite 104
Brownsville, TX 78520
Telephone: (956) 542-1161
Telecopier: (956) 542-0051

**PROPOSED ATTORNEYS FOR DEBTORS**