**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **In re** | § | |
| **XTREME POWER INC.,** | § | **CASE NO. 14-10096** |
| **XTREME POWER SYSTEMS, LLC, and** | § | **CASE NO. 14-10095** |
| **XTREME POWER GROVE, LLC** | § | **CASE NO. 14-10097** |
| **Jointly Administered Debtors.** | § | **CHAPTER 11** |
| | § | **(Jointly Administered Under** |
| | § | **CASE NO. 14-10096)** |

**ORDER (A)(I) APPROVING BIDDING
PROCEDURES IN CONNECTION WITH THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS AND, IF APPLICABLE, BY
PUBLIC AUCTION; (II) SCHEDULING A HEARING TO CONSIDER
THE SALE OF ASSETS; AND (III) APPROVING FORM AND
MANNER OF NOTICE THEREOF; AND (B) GRANTING RELATED RELIEF**

This matter comes before the Court on Motion by Debtors and Debtors in

Possession for Orders (A)(I) Approving Bidding Procedures in Connection with the Sale of

Substantially All of their Assets and, if applicable, by Public Auction; (II) Scheduling a Hearing

to Consider the Sale of Assets; and (III) Approving the Form and Manner of Notice Thereof;

(B)(I) Authorizing and Approving the Sale of Assets Free and Clear of Liens, Claims,

Encumbrances and Interests; and (II) Approving the Assumption and Assignment of Potential

Designated Executory Contracts and Unexpired Leases; and (C) Granting Related Relief  (the "Motion");[1] the Court having reviewed the Motion and the First Day Declaration and having heard the statements of counsel and evidence adduced with respect to the Motion at a hearing before the Court to consider the relief requested therein with respect to a Bidding Procedure Order (the "Hearing"); the Court having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) venue is proper in this district pursuant to 28 U.S.C. § 1409, (c) this is a core proceeding pursuant to 28 U.S.C. § 157(b), and (d) notice of the Motion and the Hearing was sufficient under the circumstances; after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors; and good and sufficient cause having been shown;

IT IS HEREBY FURTHER FOUND AND DETERMINED THAT:

A.   In the sound exercise of their business judgment, the Debtors have arranged debtor-in-possession financing whereby the DIP Lender (or its nominee) shall serve as the Initial Stalking Horse Bidder for the Assets, provided that no later than February 28, 2014, the Debtors must either (i) designate a Substitute Stalking Horse Bidder for the Assets, or (ii) obtain a financing commitment from a third party lender (the "Substitute DIP Lender") that closes on March 4, 2014 (the "Substitute DIP Closing").  In the event that the Debtors receive one or more bids after designating a Stalking Horse Bidder, the Debtors will conduct an Auction on March 31, 2014 or, in the event that the Substitute DIP Closing occurs, April 30, 2014.  The date of closing with the Substitute Stalking Horse shall be April 14, 2014 or, in the event the Substitute DIP Closing occurs, May 14, 2014.  For the avoidance in doubt, in the event the

---

[1]   Capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

Substitute DIP Closing occurs, the Debtors may designate a Substitute Stalking Horse on or before March 31, 2014.

B.     The Court finds that under the facts and circumstances of these Chapter 11 Cases, good cause exists for the relief requested in the Motion.

C.     The Debtors have further demonstrated that if the sale process is extended because either (i) a Substitute Stalking Horse Bidder for the Assets has been timely designated or (ii) a financing commitment from a Substitute DIP Lender has been timely obtained, then the process for the marketing and sale the Bidding Procedures set forth in Annex 1 hereto (1) provide an appropriate process and timetable for the Debtors to utilize in pursuing sales of their Assets, (2) will promote the Debtors' efforts to maximize the value of their estates, and (3) are in the best interests of the Debtors' and their estates, creditors and other stakeholders.

D.     A prompt sale of the Assets, as requested in the Motion, will maximize the value of the Debtors' estates and is in the best interests of creditors.

E.     The Bidding Procedures are reasonably designed to maximize the value to be obtained from a sale of the Assets.

F.     The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court granting the relief requested in the Motion for a Bidding Procedures Order, including approval of (1) a sale of the Assets to the Initial Stalking Horse Bidder (absent a Substitute Stalking Horse Bidder or Substitute DIP Lender), and if applicable; (2) the Bidding Procedures; (3) the discretion of the Debtors to select one or more Qualified Bidders to serve as a Substitute Stalking Horse and Initial Highest Bidder for an Auction; (4) the Minimum Bid Increment; (5) the Contract Procedures; and (6) the form and manner of serving the Sale Notice, the Publication Notice and the Assignment Notice.

G.      The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court scheduling one or more Sale Hearings to consider granting the other relief requested in the Motion, including approval of the sale and the transfer of the Assets to the Prevailing Bidder(s) free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED with respect to the request for a Bidding Procedures Order.

2.      On or before 5 p.m. (prevailing Central time) on March 4, 2014, (i) the Substitute DIP Closing shall have occurred or (ii) the Debtors must have entered into an agreement to sell the Assets to a Substitute Stalking Horse for a cash purchase price greater than the sum of all pre and post bankruptcy indebtedness owed to the DIP Lender and amounts owed to Silicon Valley Bank (such amounts calculated through the expected closing date of the proposed sale), and otherwise upon terms and conditions acceptable to the DIP Lender on a reasonableness standard.  Further, by February 28, 2014, or March 31, 2014 in the event the Substitute DIP Closing occurs, the Debtors must deliver to counsel for the DIP Lender a "Notice of Designation" that sets forth the general terms of the Substitute Stalking Horse Bidder's asset purchase that includes the purchase price, the identity of the proposed Substitute Stalking Horse Bidder, the financial wherewithal of the Substitute Stalking Horse Bidder, any conditions to closing, and the terms of any Break-Up Fee or any bid protections.  If the conditions of this paragraph 2 are not satisfied by the Debtors, then the Court shall enter the form of Order attached hereto as Annex 2, authorizing a Sale of the Assets to the Initial Stalking Horse and directing that

such sale be consummated on March 4, 2014 (or April 4, 2014 in the event that the Substitute DIP closing occurs but no Substitute Stalking Horse is timely designated).

3.  The Bidding Procedures, as set forth in <u>Annex 1</u> attached hereto and incorporated herein, are hereby approved in their entirety and shall govern all bids and other activities relating to the sale of the Assets.  The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.  The failure to specifically include or reference any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.

4.  As further described in the Bidding Procedures, the deadline for submitting a Qualified Bid (as such term is defined in the Bidding Procedures) shall be March 28, 2014 at 4:00 p.m. prevailing Central time (the "<u>Bid Deadline</u>"), provided, however, that if the Substitute DIP Closing occurs, the Bid Deadline shall be April 28, 2014.

5.  If more than one Qualified Bid is received for the Assets, the Debtors shall conduct the Auction; <u>provided</u>, <u>however</u>, that the Debtors may hold an Auction even if only one Qualified Bid is received by the Bid Deadline and thereafter may qualify other Qualified Bids in advance of the commencement of the Auction.

6.  The Auction shall be organized and conducted by the Debtors commencing at _____ a.m. prevailing Central time on March 31, 2014, at Baker Botts L.L.P., 98 San Jacinto Boulevard Suite 1500 Austin, Texas 78701-4078, or such other time or such other place as the Debtors shall notify all Qualified Bidders, the U.S. Trustee, the DIP Lender and any other parties invited by the Debtors.

7.     The first Qualified Bid at the Auction shall be deemed to have been made by the Initial Highest Bidder in the amount of the Initial Highest Bid.  The next Qualified Bid at the Auction shall be an amount equal to or greater than the Initial Highest Bid *plus* the amount of the approved Breakup Fee (if any) *plus* the Minimum Bid Increment (as defined below). Thereafter, the Auction will continue in the manner determined by the Debtors above; provided, however, (i) additional Bids must be Qualified Bids (except that subsequent Qualified Bids made at the Auction, although received from a Qualified Bidder that made a Qualified Bid prior to the Bid Deadline, need not be received by the Bid Deadline) and (ii) additional Qualified Bids must be made in higher increments of at least $100,000 in cash (the "Minimum Bid Increment").

8.     Except as provided in paragraph 13 below, to be timely and eligible for consideration by the Court, any objections to the Sale and/or any component thereof (any such objection, a "Sale Objection") – other than an objection to the proposed assumption and assignment of the Potential Designated Contracts or to any proposed Cure Costs  –  must:  (a) be in writing; (b) clearly specify the grounds for the objection; (c) conform to the Bankruptcy Rules and the Local Rules; and (d) be filed with the Court and served so as to be received by the following parties  by email (collectively, the "Objection Notice Parties") by no later than 12 Noon (Central time) on April 3, 2014 or, in the event the Substitute DIP Closing occurs, May 2, 2014   (the "Objection Deadline"):  (1) counsel  for  the  Debtors  (i)  Shelby  A.  Jordan: sjordan@jhwclaw.com; (ii) Nathaniel Peter Holzer:  pholzer@jhwclaw.com; (iii) Steve Tyndall: steve.tyndall@bakerbotts.com; (iv) Omar J. Alaniz: omar.alaniz@bakerbotts.com; , (2) counsel for the DIP Lender: (i) Charles A. Dale III: chad.dale@klgates.com; (ii) A. Lee Hogewood III: lee.hogewood@klgates.com, (3) counsel  for  the  Committee:  [], and  (4)  the  U.S.  Trustee: Deborah.A.Bynum@doj.gov.

9.      The Court shall conduct the Sale Hearing at ___ a.m./p.m. prevailing Central time on April 4, 2014, or May 5, 2014 if the Substitute DIP Closing occurs, or such other date and time that the Court may direct, at which hearing the Court will consider (a) approval of the Sale to the Prevailing Bidder(s) and (b) objections, if any, to the proposed assumption and assignment of the Potential Designated Contracts solely to the extent such objections are premised on the Prevailing Bidder's ability to provide adequate assurance of future performance thereunder.

10.      The Contract Procedures are approved in all respects.

11.      The Debtors shall file, and serve on all Contract Counterparties, no later than March 4, 2014 (the "Mailing Deadline"), an Assignment Notice (substantially in the form attached hereto as Annex 3) by overnight delivery service on each Non-Debtor Counterparty that may be assumed and assigned to the Prevailing Bidder (the "Potential Designated Contracts"). The Debtors shall attach to the Assignment Notice a list identifying the Non-Debtor Counterparties to the Potential Designated Contracts and the proposed corresponding Cure Costs under the Potential Designated Contracts as of the Petition Date.

12.      At any time prior to the closing of any sale transaction for the Assets, the Prevailing Bidder may direct the Debtors to serve a notice excluding any of the Potential Designated Contracts on (i) the Non-Debtor Counterparty to such Potential Designated Contracts and (ii) all Objection Notice Parties other than the Debtors, indicating, by reasonably specific information, which Potential Designated Contracts have been excluded, and stating that the Prevailing Bidder has excluded such Potential Designated Contracts. Upon service of such notice, the executory contracts and/or unexpired leases referenced in such notice (x) shall no longer be considered Potential Designated Contracts; (y) shall not be deemed to be, or to have

been, assumed or assigned; and (z) shall remain subject to assumption, rejection or assignment by the Debtors.

13.     Objections, if any, to the proposed Cure Costs, or to the proposed assumption and assignment of the Potential Designated Contracts, excluding, objections related to adequate assurance of future performance or objections relating to whether applicable law excuses the Non-Debtor Counterparty from accepting performance by, or rendering performance to, the Prevailing Bidder for purposes of section 365(c)(1) of the Bankruptcy Code, must be in writing and filed with this Court and served on the Objection Notice Parties so as to be received no later than 4:00 p.m. (prevailing Central time) on March 28, 2014 (the "Cure Objection Deadline").  Notwithstanding the foregoing, Non-Debtor Counterparties shall have until Noon (prevailing Central time) on April 3, 2014, to submit an objection to the Debtors' ability to assign the Potential Designed Contract to the Prevailing Bidder without the Non-Debtor Counterparty's consent or to the adequate assurance of future performance to be provided (the "Adequate Assurance Objection Deadline," and together with the Cure Objection Deadline, the "Contract Objection Deadlines").

14.     Where a Non-Debtor Counterparty to a Potential Designated Contract files an objection meeting the requirements of paragraph 13, objecting to the assumption by the Debtors and assignment to the Prevailing Bidder of such Potential Designated Contract (the "Disputed Designation") and/or asserting a cure amount higher than the proposed Cure Costs listed on the Assignment Notice (the "Disputed Cure Costs"), the Debtors and the Non-Debtor Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Court intervention.  If the Debtors and the Non-Debtor Counterparty determine that the objection cannot be resolved without judicial intervention, then the determination of the assumption and

assignment of the Disputed Designation and/or the amount to be paid under section 365 of the Bankruptcy Code with respect to the Disputed Cure Costs will be determined by the Court at the Sale Hearing, unless the Debtors, the Prevailing Bidder and the Non-Debtor Counterparty to the Potential Designated Contract in dispute agree otherwise.  If the Court determines at the Sale Hearing that the Potential Designated Contract will not be assumed and assigned, then such executory contract or unexpired lease shall no longer be considered a Potential Designated Contract.  If any objection related to a Disputed Designation or Disputed Cure Costs is continued beyond the Sale Hearing, the Prevailing Bidding shall escrow the portion of the Cure Costs that is disputed pending such resolution.

15.     Any Non-Debtor Counterparty to a Potential Designated Contract who fails to timely file an objection to the proposed Cure Costs or the proposed assumption and assignment of a Potential Designated Contract by the Contract Objection Deadlines, as applicable, is deemed to have consented to such Cure Costs and the assumption and assignment of such Potential Designated Contract by the Debtor and to the Prevailing Bidder, and such party shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtors, their estates or the Prevailing Bidder.

16.     If the Non-Debtor Counterparty to a Potential Designated Contract fails to timely object to the assumption and assignment of a Potential Designated Contract or the proposed Cure Cost relating thereto by the Contract Objection Deadlines, as applicable, or upon the resolution of any timely objection by agreement of the parties or order of the Court approving an assumption and assignment, such Potential Designated Contract shall be deemed to be assumed by the Debtors and assigned to the Prevailing Bidder and the proposed Cure Cost

related to such Potential Designated Contract shall be established and approved in all respects, subject to the conditions set forth in paragraph 17 below.

17.     The Debtors' decision to assume and assign the Potential Designated Contract is subject to Court approval and consummation of an Asset sale transaction with a Prevailing Bidder.   The Prevailing Bidder shall have no rights in and to a particular Potential Designated Contract until such time as the particular Potential Designated Contract is assumed and assigned in accordance with the Contract Procedures.

18.     Except as may otherwise be agreed to in an APA with a Prevailing Bidder or by the parties to a Potential Designated Contract, the defaults under the Potential Designated Contract that must be cured in accordance with section 365(b) of the Bankruptcy Code shall be cured as follows: the Purchaser shall pay all Cure Costs relating to an assumed executory contract or unexpired lease within ten (10) days after the later of (i) the closing date specified in the APA entered into with a Prevailing Bidder or (ii) the date on which such executory contract or unexpired lease is deemed assumed and assigned, in accordance with paragraph 16 hereof.

19.     The Debtors may agree to pay the Substitute Stalking Horse the value of the Debtors' estates, (i) a break-up fee of up to 2.5%, or such higher percentage as the Debtors shall agree subject to this Court's approval on March 4, 2014, of the total guaranteed cash price contained in its Initial Highest Bid plus (ii) reimbursement of reasonable expenses in an amount to be determined (item (i) and (ii) together, the "Break-Up Fee"); provided that the Break-Up Fee may only be paid upon the closing and from the sale proceeds of a sale of the Assets to a Prevailing Bidder other than the Substitute Stalking Horse.  Any agreement to provide a Break-Up Fee shall be (a) approved by the Court by separate order entered no later than March 4, 2014, (or April 1, 2014 if the Substitute DIP Closing occurs), following a hearing upon no less than

three (3) days notice to: (i) counsel to the DIP Lender; (ii) counsel to any official committees appointed in these Chapter 11 Cases; and (iii) the Office of the U.S. Trustee.  If the Debtors designate a Substitute Stalking Horse and obtain the Court's approval of a Break-Up Fee on or before March 4, 2014 (or April 4, 2014 if the Substitute DIP Closing occurs), the Debtors shall provide notice of the order approving same prior to the Bid Deadline to any other party that expressed an interest in acquiring the Assets.

20.     The form of the Sale Notice attached hereto as Annex 3 is hereby approved in all respects.  All parties in interest shall receive or be deemed to have received good and sufficient notice of all remaining relief sought in the Motion, including but not limited to the Sale Hearing, the proposed Sale Order, and the proposed sale of the Assets if, by the Mailing Deadline, the Debtors serve the Sale Notice by first class mail, postage prepaid upon: (a) counsel to the DIP Lender; (b) counsel to any official committees appointed in these Chapter 11 Cases; (c) any party that expressed in writing to the Debtors or their professional advisors an interest in acquiring the Assets; (d) non-Debtor counterparties to all Potential Designated Contracts; (e) all parties who are known to assert liens upon the Assets; (f) the Securities and Exchange Commission; (g) the Internal Revenue Service and applicable state and local taxing authorities; (h) all applicable state attorneys general, local environmental enforcement agencies and local regulatory authorities; (i) the U.S. Trustee; (j) the Federal Trade Commission; (k) the United States Attorney General/Antitrust Division of Department of Justice; (l) the U.S. Environmental Protection Agency and similar state agencies; (m) the United States Attorney's Office; and (n) all entities that have requested notice in these Chapter 11 Cases under Bankruptcy Rule 2002.

21.     The failure of any objecting person or entity to timely file and serve a Sale Objection as set forth herein shall be a bar to the assertion of any objection to the consummation

and performance of any sale contemplated by any APA, including the transfer free and clear of all Claims asserted against each of the Assets transferred as part of such sale.

22.     Notwithstanding anything to the contrary herein, the Debtors, in the exercise of their sole discretion, shall retain the right under the Bidding Procedures to modify the Bidding Procedures, including without limitation any deadlines thereunder, if such modification is determined by the Debtors to be in the best interests of the estates and to enhance the likelihood of the sale process to maximize the sale value of the Assets.

23.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Order shall be effective immediately upon its entry.

24.     The Court shall retain jurisdiction over any matter or disputes arising from or relating to the interpretation, implementation or enforcement of this Order.

**IT IS SO ORDERED**.

### ###

## ANNEX 1

*[Bidding Procedures]*

## BIDDING PROCEDURES

By motion dated January 24, 2014 (the "**Bid Procedures Motion**"), Xtreme Power Inc.; Xtreme Power Grove, LLC; and Xtreme Power Systems, LLC, as debtors and debtors in possession (collectively, the "**Debtors**") sought approval of, among other things, the procedures through which they will solicit bids ("**Bids**") to determine the highest or otherwise best offer for the sale of all or substantially all of the assets owned by the Debtors (collectively, the "**Assets**") at a public auction (the "**Auction**") under the provisions of title 11 of the United States Code (the "**Bankruptcy Code**").  Pursuant to the Bid Procedures Motion, the Debtors sought authority to establish procedures to sell the Assets in a single transaction free and clear of liens, claims, encumbrances, and interests (the "**Back Up Transaction**") to Horizon Technology Finance Corporation or its nominee (the **"Initial Stalking Horse Bidder"**) or, if applicable, to a Substitute Stalking Horse Bidder (as defined below) or other Qualified Bidder (as defined below) that is determined to have made the highest and best offer in accordance with the Bidding Procedures set forth below (the "**Prevailing Bidder**").

On February 6, 2014, the United Stated Bankruptcy Court for the Western District of Texas (the "**Court**") entered an order (the "**Bidding Procedures Order**")[2] that, among other things, authorized the Debtors to determine the highest or otherwise best bid for the Assets through the process and procedures set forth below (the "**Bidding Procedures**").

Pursuant to the Bidding Procedures Order, these Bidding Procedures shall apply only in the event that either a Substitute Stalking Horse is identified, or the Debtors obtain a financing commitment from a "**Substitute DIP Lender,**" on or before February 28, 2014.  Further, by February 28, 2014, or March 31, 2014 in the event the Substitute DIP Closing (defined below) occurs, the Debtors must deliver to counsel for the DIP Lender a "Notice of Designation" that sets forth the general terms of the Substitute Stalking Horse Bidder's asset purchase that includes the purchase price, the identity of the proposed Substitute Stalking Horse Bidder, the financial wherewithal of the Substitute Stalking Horse Bidder, any conditions to closing, and the terms of any Break-Up Fee or any bid protections.  In the event that the Debtors close a financing transaction with a Substitute DIP Lender (the "**Substitute DIP Closing**"), the Debtors may identify a Substitute Stalking Horse on or before March 31, 2014.  In the event the Substitute DIP Closing occurs and the Debtors do not identify a Substitute Stalking Horse by March 31, 2014, then the Back Up Transaction will close on April 4, 2014.

### *Participation Requirements and Due Diligence*

1.     In order to participate in the bidding process, the Auction, or otherwise be considered for any purpose hereunder, a person interested in purchasing the Assets (a "Potential Bidder") must first deliver the following materials to the Debtors and their counsel:

    (a)     An executed confidentiality agreement in form and substance satisfactory to the Debtors and their counsel (the "Confidentiality Agreement").  Without limiting

---

[2] Capitalized terms not otherwise defined in these Bidding Procedures shall have the meanings ascribed to them in the Bidding Procedures Order or Sale Motion, as applicable.

the foregoing sentence, the Confidentiality Agreement will provide that all non-public information about the Debtors received by a Potential Bidder, or if the bidder is qualified, a Qualified Bidder (as defined below), will be kept strictly confidential and used only in connection with analyzing a transaction for the purchase of the Assets.  The Confidentiality Agreement also will provide that the Debtors and their advisors will have access to information provided about a Potential Bidder by the Potential Bidder and that any confidential information received from a Potential Bidder will be used only in connection with analyzing whether the Potential Bidder will be qualified as a Qualified Bidder and a potential transaction for the Assets.

(b)     Written evidence that enables the Debtors and their advisors to determine, in their sole discretion, in consultation with the DIP Lender, whether the Potential Bidder has the financial and other ability to close the contemplated sale transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in connection therewith.

(c)     The Debtors shall provide these Bidding Procedures, together with a copy of a form Asset Purchase Agreement (the "APA"), to each Potential Bidder.  All Potential Bidders, whether deemed Qualified Bidders (as defined below) or not, consent to the jurisdiction of this Bankruptcy Court to determine matters concerning the sale, their Bid and otherwise with respect to the process and waive any right to any other venue.

2.     Any Potential Bidder wishing to conduct due diligence concerning a prospective acquisition transaction of the Assets shall be granted access to all relevant information regarding the Assets and the related business of each of the Debtors reasonably necessary to enable a Potential Bidder to evaluate the Assets and the prospective transaction.  The Debtors shall make such access available to Potential Bidders during normal business hours as soon as reasonably practicable following execution of the Confidentiality Agreement.  Potential Bidders interested in conducting due diligence should contact Matthew Jacobs, Gordian Group LLC, 950 Third Avenue, NY, NY 10022 (212.486.3600).  Notwithstanding the foregoing, the Debtors are not required to provide confidential or proprietary information to any person if the Debtors, in consultation with the DIP Lender, believe that such disclosure would be detrimental to the interests of the Debtors' estates.  All due diligence must be completed before the Bid Deadline (as defined below) unless the Debtors in their sole discretion, but in consultation with the DIP Lender and the Committee, agree otherwise.  No condition(s) allowing or regarding further due diligence will be accepted or authorized after the Bid Deadline.  Potential Bidders are required to exercise their own discretion before relying on any information regarding the Assets provided by the Debtors.  Neither the Debtors nor their representatives (nor the DIP Lender or its representatives) are responsible for, and will bear no liability with respect to, any information obtained by Potential Bidders pursuant hereto.

3.     The Debtors shall: (i) receive and evaluate any Bids from Potential Bidders; (ii) request information from Potential Bidders, engage in discussions with Potential Bidders, and

take such other actions to determine whether any Bid constitutes or could lead to a Qualified Bid (as defined below); and (iii) take any other actions contemplated under these Bidding Procedures.

### *Submission of Bids*

4.      Any Qualified Bidder interested in purchasing the Assets must submit a Bid prior to 4:00 p.m. prevailing Central time on March 28, 2014 (the "Bid Deadline"); provided, however, that if the Substitute DIP Closing occurs, the Bid Deadline shall be April 28, 2014.  In order for such Bid to be considered, however, it must be a "Qualified Bid."

5.      The Debtors and their advisors, in consultation with the DIP Lender, will determine if a Bid is a Qualified Bid based on the requirements herein.  A Potential Bidder will be deemed to be a "Qualified Bidder" if the Debtors, in their sole discretion, but in consultation the DIP Lender and any official committee appointed in these Chapter 11 Cases (the "Committee") , determine that such Potential Bidder submitted a Qualified Bid.

6.      A Bid will be considered a "Qualified Bid" only if the Bid is for the purchase and sale of all or substantially all of the Assets and fulfills the following requirements on or prior to the Bid Deadline (capitalized terms used in this section are defined later in the Bidding Procedures):

(a)      Provides that the Qualified Bidder's Bid shall remain open and irrevocable until the earlier of (X) thirty (30) days following the date of entry of a Prevailing Bidder Sale Order; or (Y) the date of the closing of the sale of the Assets pursuant to the Prevailing Bidder Sale Order (the "Bid Expiration Date");

(b)      Provides that the Qualified Bidder is obligated to perform as a Back-Up Bidder (as defined below) in the event such Qualified Bidder is not the Prevailing Bidder;

(c)      Is made by a person or entity that demonstrates evidence of fully committed and firm financing for each component of debt or equity in support of such Bid and other ability to consummate the proposed transaction, in each case acceptable to the Debtors in their sole discretion, but in consultation with the DIP Lender;

(d)      Provides written evidence that the Qualified Bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission of its Bid and the execution of the APA, or a representation that no such authorization or approval is required;

(e)      Provides that the purchase price will be paid in cash, cash equivalents, or such other consideration acceptable to the Debtors, in consultation with the DIP Lender;

(f)      Provides by wire transfer or immediately available funds to the Debtors or an appropriate escrow agent before the Bid Deadline of an earnest money deposit

equal to (X) 10% of the dollar amount of the purchase price of such Bid; or (Y) 10% of the value of such Bid, (the "Deposit");

(g)    Provides evidence satisfactory to the Debtors that the Qualified Bidder is reasonably likely to obtain prompt regulatory approval, if any is required, to purchase the Assets;

(h)    Is submitted in a writing in the form of the APA with any proposed changes to the APA set forth in an electronic form both clean and marked to reflect such changes signed by the Qualified Bidder, that:

    (i)    Identifies the Qualified Bidder and any members of its investor group, if applicable;

    (ii)    Is not subject to conditions, representations or terms that the Debtors determine, in consultation with the DIP Lender, to be unacceptable;

    (iii)    Is not conditioned upon the Bankruptcy Court's approval of any Bid protections, such as a break-up fee, termination fee, expense reimbursement, working fee or similar type of payment; provided, however, the Debtors may accept an Initial Highest Bid (as defined below) with such bid protections to the extent authorized by the Court according to the procedure outlined below;

    (iv)    Does not contain any financing or due diligence contingencies to closing of the proposed transaction unless the Debtors and the DIP Lenders otherwise agree that such contingencies are acceptable;

    (v)    Does not contain any condition to closing of the transaction relating to the receipt of any third party approvals (excluding required Bankruptcy Court approval and any required governmental and/or regulatory approval);

    (vi)    Expressly acknowledges and represents that the Qualified Bidder: (A) has had an opportunity to conduct any and all due diligence regarding the Assets and the proposed transaction prior to making its Bid, (B) has relied solely upon its own independent review, investigation and/or inspection of any documents and the Assets in making its Bid or that of any of its legal, financial or other advisors, and (C) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the business of the Debtors or the Assets or the proposed transaction, or the completeness or accuracy of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the APA ultimately accepted and executed by the Debtors;

    (vii)    Identifies each and every executory contract and unexpired lease that the Qualified Bidder desires the Debtors to assume and assign to the Qualified

Bidder at the closing and provides evidence of such Qualified Bidder's ability to provide adequate assurance of future performance of such contracts or leases (as required by section 365(f)(2)(B) of the Bankruptcy Code) along with the Bid; and

(i)  Contains other information reasonably requested by the Debtors.

7.  A Qualified Bidder that desires to make a Bid must deliver written electronic copies of its Bid on or prior to the Bid Deadline to any of the following representatives of the Debtors: (1) Peter S. Kaufman and David L. Herman, Gordian Group LLC, 950 Third Avenue, NY, NY 10022; (2) Shelby A. Jordan and Nathaniel Peter Holzer, Jordan, Hyden, Womble, Culbreth & Holzer P.C., 500 N. Shoreline Blvd, Suite 900, Corpus Christi, Texas 78471; (3) Steve Tyndall, Baker Botts L.L.P., 98 San Jacinto Boulevard Suite 1500 Austin, Texas 78701-4078; or (4) Omar J. Alaniz, Baker Botts L.L.P., 2001 Ross Avenue, Dallas, Texas 75201. The Debtors shall deliver copies of any such Bids to the DIP Lender and the Committee.

8.  After the Bid Deadline, the Debtors, in their sole discretion but in consultation with the DIP Lender and the Committee, shall determine which Qualified Bid represents the then-highest or otherwise best bid (the "Initial Highest Bid" and the entity submitting such Bid, the "Initial Highest Bidder"). Prior to or at the start of the Auction, each Qualified Bidder that timely submitted a Qualified Bid or a Qualified Partial Bid will be advised of such Initial Highest Bid and the Debtors may: (a) distribute copies of other Qualified Aggregate Bids or Qualified Partial Bids to other Qualified Bidders prior to or during the Auction; or (b) proceed with the open or sealed bidding process set forth in the Bidding Procedures Order to the extent authorized therein.

### *Due Diligence From Potential Bidders or Qualified Bidders*

9.  Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with the acquisition transaction of the Assets. Failure by a Potential Bidder to comply with requests for additional information may be a basis for the Debtors to determine that a Potential Bidder is not a Qualified Bidder. Similarly, each Qualified Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors regarding such Qualified Bidder's financial wherewithal to consummate and perform obligations in connection with the acquisition transaction of the Assets as the Auction progresses. Failure by a Qualified Bidder to comply with requests for additional information may be a basis for the Debtors to determine that the Qualified Bidder may no longer participate in the Auction.

### *"As Is, Where Is"*

10.  The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or estates or any other party, except to the extent set forth in the APA between the Debtors and the

Prevailing Bidder. Except as otherwise provided in the Prevailing Bidder's APA, all of the Debtors' right, title and interest in and to the Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests therein (collectively, the "Claims") pursuant to section 363(f) of the Bankruptcy Code, such Claims to attach to the net proceeds of the sale of the Assets, with the same validity and priority as existed immediately prior to such sale.

### *Later Award of Break-Up Fee to Substitute Stalking Horse Bidder*

11.     Pursuant to the Bidding Procedures Order, on or prior to February 28, 2014 (or March 31, 2014 in the event the Substitute DIP Closing occurs), the Debtors may designate a Substitute Stalking Horse Bidder to take the place of the DIP Lender as the initial stalking horse bidder. The Debtors may agree to pay the Substitute Stalking Horse Bidder (i) a break-up fee in an amount up to 2.5% (or such higher percentage as the Debtors shall agree, subject to Court approval) of the total guaranteed cash price contained in its Initial Highest Bid plus (ii) reimbursement of reasonable expenses in an amount to be determined (item (i) and (ii) together, the "Break-Up Fee"); provided that the Break-Up Fee may only be paid upon the closing and from the sale proceeds of a sale of the Assets to a Prevailing Bidder other than the Substitute Stalking Horse. Any agreement to provide a Break-Up Fee shall be (a) approved by the Court by separate order entered no later than March 4, 2014 (or April 4, 2014 if the Substitute DIP Closing occurs), following a hearing upon no less than three (3) days-notice to: (i) counsel to the DIP Lender; (ii) counsel to the Committee; and (iii) the Office of the U.S. Trustee. If the Debtors designate a Substitute Stalking Horse and obtain the Court's approval of a Break-Up Fee on or before March 4, 2014 (or April 4, 2014 if the Substitute DIP Closing occurs), the Debtors shall provide notice of the order approving same prior to the Bid Deadline to any other party that expressed an interest in acquiring the Assets.

### *The Auction*

12.     If more than one Qualified Bid has been submitted for the Assets in accordance with these Bidding Procedures, the Debtors will conduct the Auction on March 31, 2014 at _____ a.m., prevailing Central time, or April 30, 2014 in the event of the Substitute DIP Closing occurs, with respect to such Qualified Bids in order to determine the highest and best Bid (the "Prevailing Bid") to submit for approval by the Bankruptcy Court at the Prevailing Bidder Sale Hearing (as defined below). The Auction shall be organized and conducted by the Debtors at Baker Botts L.L.P., 98 San Jacinto Boulevard Suite 1500 Austin, Texas 78701-4078 or such other location as may be announced prior to the Auction to all Qualified Bidders, the DIP Lender, the U.S. Trustee, and the Committee. The Auction will be recorded by video or stenographic means.

13.     The only persons or entities who will be permitted to Bid at the Auction are the authorized representatives of each Qualified Bidder (the "Auction Participants"). While only the Auction Participants may make Qualified Bids at the Auction, the Auction may be attended and viewed also by the Debtors, the DIP Lender, the Committee, and their respective counsel, financial advisors, and/or other authorized representatives.

14. The Debtors are authorized to conduct the Auction in accordance with such procedures and requirements as may be established at the discretion of the Debtors and their counsel, in consultation with counsel to the DIP Lender and the Committee, which rules may include the determination of the amount of time between Qualified Bids, whether to adjourn the Auction at any time and from time to time, the conducting of multiple rounds of open or sealed bidding with notice only to the parties entitled to attend the Auction, and to declare that the Auction has ended when no further Bids are timely made or otherwise.

15. The first Qualified Bid at the Auction shall be deemed to have been made by the Initial Highest Bidder in the amount of the Initial Highest Bid. The next Qualified Bid at the Auction shall be an amount equal to or greater than the Initial Highest Bid plus the amount of the approved Breakup Fee (if any) plus the Minimum Bid Increment (as defined below). Thereafter, the Auction will continue in the manner determined by the Debtors above; provided, however, (i) additional Bids must be Qualified Bids (except that subsequent Qualified Bids made at the Auction, although received from a Qualified Bidder that made a Qualified Bid prior to the Bid Deadline, need not be received by the Bid Deadline) and (ii) additional Qualified Bids must be made in higher increments of at least $100,000 in cash (the "Minimum Bid Increment").

16. The Debtors, in consultation with the DIP Lender and the Committee, shall determine, in their sole discretion, whether a Qualified Bid by a Qualified Bidder at the Auction matches or is higher and better than the prior Qualified Bid.

17. At the conclusion of the Auction: (i) the Debtors shall, in their sole discretion but in consultation with the DIP Lender and the Committee, select (X) the Prevailing Bid and (Y) the second highest or best offer for the Assets (the "Back-Up Bid"); (ii) the Debtors shall notify the Prevailing Bidder that such person's offer has been determined by the Debtors to be the Prevailing Bid and will be contingent only on Bankruptcy Court approval, and shall notify the person that made the Back-Up Bid (the "Back-Up Bidder") that such person's offer has been determined by the Debtors to be a Back-Up Bid and will be contingent only on the failure of the Prevailing Bid to close as set forth below and Bankruptcy Court approval; and (iii) the Debtors shall file a notice with the Bankruptcy Court announcing the Prevailing Bidder. Prior to the commencement of the Prevailing Bidder Sale Hearing, the Prevailing Bidder shall complete and sign all agreements and documents as necessary to bind the Prevailing Bidder to all of the terms and conditions contemplated by the Prevailing Bid.

18. The Deposit of the Prevailing Bidder or the Back-Up Bidder, as the case may be, shall be applied by the Debtors against the purchase price to be paid by the Prevailing Bidder or the Back-Up Bidder, as applicable, at the closing of the relevant transaction approved by the Bankruptcy Court. The Prevailing Bidder's Deposit shall be held by the Debtors and forfeited to the Debtors if the Prevailing Bidder breaches its obligations to close under the APA in accordance with the Prevailing Bid.

19. The Debtors shall not be deemed to have finally accepted any Qualified Bid unless and until such Qualified Bid and the Debtors' acceptance thereof have been authorized by

order of the Bankruptcy Court following the conclusion of the Prevailing Bidder Sale Hearing.

### Back-Up Bidder

20.     If for any reason the Prevailing Bidder fails to consummate the acquisition of the Assets in accordance with the Prevailing Bid, and in any event no later than ten (10) days from the entry of the Prevailing Bidder Sale Order, the Debtors are authorized to proceed with the sale of the Assets to the Back-Up Bidder in accordance with the Back-Up Bid without further order of the Bankruptcy Court.  If for any reason the Back-Up Bidder fails to consummate the acquisition of the Assets in accordance with the Back-Up Bid, the Back-Up Bidder's Deposit shall be forfeited to the Debtors.

### Deposit

21.     No later than the third (3rd) business day following the entry of the Prevailing Bidder Sale Order, the Debtors shall return to each Qualified Bidder(s), other than the Prevailing Bidder and the Back-Up Bidder, their respective Deposit(s).  No later than the third (3rd) business day after the closing of the sale of the Assets to the Prevailing Bidder, the Debtors shall return the Back-Up Bidder's Deposit to the Back-Up Bidder.

### Prevailing Bidder Sale Hearing and Objection Deadline

22.     The sale hearing to consider the relief requested in the Sale Motion (defined below) and to consider whether to approve the Prevailing Bid and the Back-Up Bid (the "Prevailing Bidder Sale Hearing") shall be held before the Bankruptcy Court on April 4, 2014 at [____].m., prevailing Central time, or May [5], 2014 if the Substitute DIP Closing occurs, at which time the Court will enter the "Prevailing Bidder Sale Order."

23.     Objections, if any, to the to approval of the sale of Assets to the Prevailing Bidder (the "Sale Motion") —other than an objection to the proposed assumption and assignment of the Designated Agreements or to any proposed Cure Costs—including, but not limited to, the sale of the Assets free and clear of Claims pursuant to section 363(f) of the Bankruptcy Code shall be (a) be in writing; (b) clearly specify the grounds for the objection; (c) conform to the Bankruptcy Rules and the Local Rules; and (d) be filed with the Court and served so as to be received by the following parties by email (collectively, the "Objection Notice Parties") by no later than 12 Noon (Central time) on April 3, 2014 or, in the event the Substitute DIP Closing occurs, May 2, 2014  (the "Objection Deadline"): (1) counsel for the Debtors (i) Shelby A. Jordan: sjordan@jhwclaw.com, (ii) Nathaniel Peter Holzer: pholzer@jhwclaw.com, (iii) Steve Tyndall: steve.tyndall@bakerbotts.com, (iv) Omar J. Alaniz: omar.alaniz@bakerbotts.com; (2) counsel for the DIP Lender: (i) Charles A. Dale III: chad.dale@klgates.com, (ii) A. Lee Hogewood III: lee.hogewood@klgates.com; (3) counsel for the Committee: []; and (4) the U.S. Trustee, Deborah A. Bynum:  Deborah.A.Bynum@usdoj.gov.

24.     Any person objecting to the Sale Motion that has not filed an objection by the Objection Deadline shall not be heard at the Prevailing Bidder Sale Hearing and shall be barred from objecting to the Sale Motion.

*Modifications*

25. The Debtors in their sole discretion, but in consultation with the DIP Lender and the Committee, may adopt, implement, and/or waive such other, additional or existing procedures or requirements that serves to further an orderly Auction and bid process, including, but not limited to, the imposition of a requirement that all Qualified Bidders submit sealed Qualified Bids during the Auction, all without further notice except to those parties that would be entitled to attend at an Auction or participated in the Auction, as appropriate.

26. The Debtors, in their sole discretion but in consultation with the DIP Lender and the Committee, may (a) determine which Qualified Bid, if any, is the Prevailing Bid, and (b) reject at any time before entry of the Prevailing Bidder Sale Order approving the Prevailing Bid, any Bid that, in the discretion of the Debtors, in consultation with the DIP Lender and any Committee is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors.  At or before the conclusion of the Auction, the Debtors in their sole discretion, but in consultation with the DIP Lender and the Committee, may impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in this case.

## ANNEX 2

*[Initial Stalking Horse Sale Order -- TO BE PROVIDED]*

## ANNEX 3

*[Sale and Assignment Notice]*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| In re | § | |
| **XTREME POWER INC.,** | § | **CASE NO. 14-10096** |
| **XTREME POWER SYSTEMS, LLC, and** | § | **CASE NO. 14-10095** |
| **XTREME POWER GROVE, LLC** | § | **CASE NO. 14-10097** |
| **Jointly Administered Debtors.** | § | **CHAPTER 11** |
| | § | **(Jointly Administered Under** |
| | § | **CASE NO. 14-10096)** |

**Notice of Entry of Order (I) Approving**
**Bidding Procedures in Connection with the Sale of Substantially**
**All of the Debtors' Assets by Public Auction and (II) Scheduling a Hearing to**
**Consider the Sale of Assets Free and Clear of Liens, Claims, Encumbrances and Interests**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

*__The Sale Motion__*

　　　　1.　　On January 22, 2014 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas (the "Bankruptcy Court").

　　　　2.　　Xtreme Power Inc. and its affiliates, the above-captioned debtors, (the "Debtors"), filed a motion (the "Sale Motion") requesting, among other forms of relief: (a) the institution of certain bidding, auction and notice procedures for the solicitation and consideration of competing offers for the Assets (collectively, the "Bidding Procedures," attached as Annex 1 to the Bidding Procedures Order (as defined below)); (b) the sale of the all or substantially all of the Debtors' assets (the "Assets") free and clear of all liens, claims (as such term is defined by section 101(5) of the Bankruptcy Code), encumbrances, and other interests to the Prevailing Bidder; and (c) the assumption and assignment of certain executory contracts and unexpired leases to the Prevailing Bidder.

### *The Bidding Procedures Order*

3.      The Debtors are soliciting offers for the purchase of the Assets, and the Bankruptcy Court has entered an order (the "Bidding Procedures Order") approving auction and Bidding Procedures (the "Bidding Procedures") for the Assets.  The Bidding Procedures are set forth in detail in Annex 1 to the Bidding Procedures Order.[1]

### *Obtaining Copies of Papers*

4.      You may obtain a copy of the Sale Motion, the Bidding Procedures Order and any Asset Purchase Agreement (once available) free of charge by contacting:  Shelby A. Jordan and Nathaniel Peter Holzer, Jordan, Hyden, Womble, Culbreth & Holzer P.C., 500 N. Shoreline Blvd, Suite 900, Corpus Christi, Texas 78471.

### *Free and Clear Nature of the Sale*

5.      In connection with any APA, the Debtors and the applicable Prevailing Bidder will seek an order or orders from the Bankruptcy Court approving the sale (a "Sale Order").  Please note that a Sale Order is expected to provide that the Prevailing Bidder is not liable for certain claims, liens and other interests related to or connected with the Assets that could have arisen prior to closing.  ***The specific terms of sale will be provided in the proposed Sale Order and APA entered proposed to be into among the Debtors and the Prevailing Bidder.***  These materials will be filed with the Bankruptcy Court and shall be available upon request.  More specifically, at any time on or before March 4, 2014, the Debtors may file a "stalking horse" APA entered into with a Substitute Stalking Horse Bidder (a "Stalking Horse Agreement") which, with the Court's approval following a hearing upon no less than three (3) days notice to certain parties in interest (and in any event on or before March 4, 2014), may

---

[1]     Capitalized terms used but not otherwise defined herein have the meanings given to them in the Bidding Procedures Order or the Bidding Procedures.

include a break-up fee in an amount up to 2.5%, or such higher percentage as the Debtors shall agree subject to this Court's approval, of the total guaranteed cash price contained in its Initial Highest Bid <u>plus</u> (ii) reimbursement of reasonable expenses in an amount to be determined (item (i) and (ii) together, the "<u>Break-Up Fee</u>"); provided that the Break-Up Fee may only be paid upon the closing and from the sale proceeds of a sale of the Assets to a Prevailing Bidder other than the Substitute Stalking Horse.  Finally, promptly following the designation of the "Prevailing Bid" at the Auction, the Debtors will file such Bid (including the applicable APA) with the Bankruptcy Court.

### ***Certain Key Dates in the Sale Process***

6.     The Bidding Procedures describe certain requirements for interested parties to participate in the bidding for the Assets.  Interested bidders are encouraged to review these requirements carefully and, for further information, are invited to contact.

7.     Bids for all or substantially all of the Assets meeting certain requirements set forth in the Bidding Procedures ("<u>Qualifying Bids</u>") are due by 4:00 p.m. prevailing Central time on March 28, 2014 (or as otherwise permitted by the Bidding Procedures).

8.     Consistent with the Bidding Procedures Order, an auction of the Assets (the "<u>Auction</u>") is scheduled to be conducted by the Debtors commencing at ___ a.m. on March 31, 2014, prevailing Central time, at Baker Botts L.L.P., 98 San Jacinto Boulevard Suite 1500 Austin, Texas 78701-4078.  All interested parties are invited to submit a Qualifying Bid to purchase the Assets pursuant to the Bidding Procedures.  Only Qualified Bidders and certain other invited parties identified in the Bidding Procedures are permitted to attend the Auction, the time and place of which may change with notice only to the relevant invited parties.

9.     Additional details about these matters, and other deadlines relevant to bidding on the Assets, are contained in the Bidding Procedures.

### *Sale Hearing*

10.     A hearing to approve the APA and the sale of the Assets to the Prevailing Bidder(s) is scheduled to be conducted at ___a.m./p.m prevailing Central time on April 4, 2014 at the United States Bankruptcy Court for the Western District of Texas, Homer J. Thornberry Federal Judicial Bldg., 903 San Jacinto Blvd., Suite 326, Austin, Texas 78701 , or as soon thereafter as counsel may be heard.

11.     The Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment in open court or on the Bankruptcy Court's calendar.

### *Deadline and Procedures for Objecting to the Sale*

12.     The Debtors propose that, to be timely and otherwise eligible for consideration by the Court, objections to the approval of the sale of Assets to the Prevailing Bidder – other than an objection to the proposed assumption and assignment of the Potential Designated Contracts or to any proposed Cure Costs including, but not limited to, the sale of the Assets free and clear of Claims pursuant to section 363(f) of the Bankruptcy Code for all parties in interest must: (a) be in writing; (b) clearly specify the grounds for the objection; (c) conform to the Bankruptcy Rules and the Local Rules; and (d) be filed with the Court and served so as to be received by the following parties (collectively, the "Objection Notice Parties") by no later than 12 Noon (Central time) by email on April 3, 2014 or, in the event the Substitute DIP Closing occurs, May 2, 2014 (the "Objection Deadline"): (1) counsel for the Debtors (i) Shelby A. Jordan: sjordan@jhwclaw.com, (ii) Nathaniel Peter Holzer:  pholzer@jhwclaw.com, (iii) Steve       Tyndall:       steve.tyndall@bakerbotts.com,       (iv)       Omar       J.       Alaniz: omar.alaniz@bakerbotts.com;  (2) counsel  for  the  DIP  Lender:  (i)  Charles  A.  Dale  III: chad.dale@klgates.com, (ii) A. Lee Hogewood III: lee.hogewood@klgates.com; (3) counsel for

the Committee: []; and (4) the U.S. Trustee, Deborah A. Bynum: Deborah.A.Bynum@usdoj.gov.

### ***Contract Procedures***

13.     The Sale Order, if approved, shall authorize the assumption by the Debtors and assignment to the Prevailing Bidder of various executory contracts and unexpired leases that are the property of the Debtors (collectively, the "Assumed Agreements").  The Court has approved certain procedures (the "Contract Procedures") that govern the Debtors' designation executory contracts and unexpired leases that may constitute an Assumed Agreement.  The Contract Procedures are set forth in detail in the Sale Motion and were approved in the Bidding Procedures Motion.

14.     The Debtors will file a notice (the "Assignment Notice") of the assumption and assignment of such executory contracts and unexpired leases and the proposed amounts necessary to cure defaults related thereto (the "Cure Costs") by the Mailing Deadline, which is March 4, 2014.  Such Assignment Notice shall be filed with the Court and shall be served by overnight delivery service on each non-debtor counterparty to an executory contract or unexpired lease with any of the Debtors (each a "Non-Debtor Counterparty") that may be assumed and assigned to the Prevailing Bidder (the "Potential Designated Contracts").  The Debtors shall attach to the Assignment Notice a list identifying the Non-Debtor Counterparties to the Potential Designated Contracts and the proposed corresponding Cure Costs under the Potential Designated Contracts as of the Petition Date.

### ***Debtors' Reservation of Rights to Modify Procedures***

15.     The Debtors reserve the right to modify the Bidding Procedures as necessary, including, without limitation, any deadlines thereunder, if such modification is determined by the Debtors, in consultation with the DIP Lender and counsel to any official

committees appointed in these Chapter 11 Cases, after or as they deem appropriate to maximize value for the Debtors' estates and creditors.

16.     This Notice is subject to the full terms and conditions of the Sale Motion, the Bidding Procedures Order, the Bidding Procedures and the Contract Procedures, which shall control in the event of any conflict.  The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated: February **[___]**, 2014
Austin, Texas

Respectfully submitted,

**_JORDAN, HYDEN, WOMBLE, CULBRETH & HOLZER, P.C._**

_____
Shelby A. Jordan
Texas Bar No. 11016700
100 Congress Ave., Suite 2109
Austin, TX 78701
Telephone:    (512) 469-3537
Facsimile:      (361) 888-5555

Nathaniel Peter Holzer
Texas Bar No. 00793971
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX 78401-0341
Telephone:    (361) 884-5678
Facsimile:      (361) 888-5555

Antonio Ortiz
Texas Bar No. 24074839
1534 E. 6th Street, Suite 104
Brownsville, TX 78520
Telephone:    (956) 542-1161
  Telecopier:    (956 ) 542-0051

**PROPOSED ATTORNEYS FOR DEBTORS-IN-POSSESSION**