**Granted at hearing held on 1/23/2014.**



**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: January 24, 2014.**

_____
**H. CHRISTOPHER MOTT**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re | § | |
| **XTREME POWER INC.,** | § | **CASE NO. 14-10096** |
| **XTREME POWER SYSTEMS, LLC, and** | § | **CASE NO. 14-10095** |
| **XTREME POWER GROVE, LLC** | § | **CASE NO. 14-10097** |
| **Jointly Administered Debtors.** | § | **CHAPTER 11** |
| | § | **(Jointly Administered Under** |
| | § | **CASE NO. 14-10096)** |

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507 (A) AUTHORIZING POST-PETITION FINANCING, (B) GRANTING ADEQUATE PROTECTION, (C) SCHEDULING A FINAL HEARING, AND (D) GRANTING RELATED RELIEF

THIS MATTER having come before the Court upon the motion (the "DIP Motion") of

Xtreme Power Inc., Xtreme Power Grove, LLC, and Xtreme Power Systems, LLC

(collectively, the "Debtors" or "Borrowers"), in the above-captioned chapter 11 cases

(collectively, the "Cases") pursuant to Sections 105, 361, 362, 363, 364(c), 364(d) and 507 of

title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy

Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and the Local Bankruptcy Rules for the Western District of Texas, Austin Division (the "Local Rules"), seeking, among other things:

(i)        authorization for the Debtors to obtain a secured post-petition debtor-in-possession financing facility (the "DIP Credit Facility" or "DIP Loan") from Horizon Technology Finance Corporation or an affiliated designee ("Lender") pursuant, in the interim, to the terms and conditions set forth in that certain term sheet attached as Exhibit A to the DIP Motion  (the "DIP Term Sheet")[1] and, ultimately, to the terms and conditions of definitive documentation in form and substance satisfactory to Lender and otherwise consistent with the DIP Term Sheet (the "DIP Documents");

(ii)       authorization for the Debtors to execute and deliver the DIP Documents and to perform such other and further acts as may be required in furtherance of the DIP Credit Facility and the DIP Documents;

(iii)      authorization for the Debtors to draw on the DIP Credit Facility in an amount not to exceed the Initial DIP Availability (as defined below), subject to the conditions precedent set forth in the DIP Term Sheet, and to use proceeds of the DIP Credit Facility to pay for, among other things, working capital and general corporate purposes of the Debtors and the administration of the Cases, but only in accordance with the then-current Approved Budget (as defined in the DIP Term Sheet, a copy of the current Approved Budget is attached hereto as Exhibit A);

(iv)      the granting of adequate protection to the Silicon Valley Bank ("SVB"), and the Lender on account of their respective pre-petition liens, claims, and security interests being primed by the DIP Credit Facility;

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Term Sheet or the DIP Motion.  To the extent of any inconsistency, the meanings ascribed in the DIP Term Sheet shall govern.

(v)     granting the DIP Credit Facility and all obligations arising thereunder (collectively, the "DIP Obligations") allowed superpriority administrative expense claim status in the Cases pursuant to 11 U.S.C. § 364(c)(1);

(vi)    granting to the Lender automatically perfected first-priority security interests in and liens on all of the Collateral (as defined below) to secure all DIP Obligations pursuant to 11 U.S.C § 364(c)(2),(3) and (d);

(vii)   modifying the automatic stay imposed by Section 362 of the Bankruptcy Code solely to the extent necessary to provide Lender with the relief necessary to implement and effectuate the terms and provisions of the DIP Term Sheet;

(viii)  pursuant to Bankruptcy Rule 4001, that an interim hearing on the Motion (the "Interim Hearing") be held before this Court to consider entry of this proposed interim order annexed to the Motion (the "Interim Order"); and

(ix)    scheduling a final hearing (the "Final Hearing") not later than February [11], 2014, to consider entry of a final order (the "Final Order") and to consider any requested relief not granted under this Interim Order on a final basis, including other terms set forth in the DIP Term Sheet, DIP Motion, and to be set forth in the DIP Documents to be filed with this Court.

NOW THEREFORE, the Court having considered the DIP Motion, the exhibits attached thereto, the DIP Term Sheet, and the evidence submitted at the Interim Hearing; and due and appropriate notice of the DIP Motion, the relief requested therein, and Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001, and 9014; and the Interim Hearing to consider the interim relief requested in the DIP Motion having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief

3

requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and it further appearing that the Debtors are unable to obtain unsecured credit for money borrowed allowable as an administrative expense under Bankruptcy Code Section 503(b)(1); and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.  **Cases**.  On January 22, 2014 (the "Petition Date"), the Debtors filed voluntary petitions for relief under the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the entry of this Interim Order, this Court has not appointed a trustee, examiner, or creditors' committee.

B.  **Jurisdiction and Venue**.  This Court has jurisdiction over the DIP Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of the Debtors' chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(1).

C.  **The Pre-Petition Senior Debt**.  Prior to the Petition Date, the Debtors and Lender were parties to a Secured Promissory Note dated September 28, 2012 (the "Pre-Petition Note").  As of the bankruptcy filing date, the outstanding amount under the Pre-Petition Note was approximately $6.8 million (the "Pre-Petition Lender Debt").  Pursuant to a Venture Loan

4

and Security Agreement, as amended, the Pre-Petition Lender Debt is secured by substantially all of the Debtors' assets (the "Pre-Petition Lender Security").  The Debtors and Silicon Valley Bank were parties to a Loan and Security Agreement dated April 18, 2011 (the "SVB Loan"). As of the bankruptcy filing, the outstanding amount under the SVB Loan was approximately $500,000 (the "SVB Debt").  The SVB Debt is secured by substantially all of the Debtors' assets (the "SVB Security" and together with the Pre-Petition Lender Security, the "Existing Security Interests").  The SVB Security is senior to the Pre-Petition Lender Security.

D.    **Unsecured Credit Unavailable**.  Since prior to the commencement of these cases, the Debtors have been confronted with the significant challenge of securing funding to pay for the expenses of the operation of their businesses as well as for the administration of their estates.  The DIP Credit Facility will ensure that the Debtors have the funds necessary to pay taxes and salaries, and to the extent possible, to preserve the Debtors' going concern value through the contemplated sale process.  The Debtors' regular cash flow is not sufficient to pay the ongoing operating and administrative expenses.  The Debtors' financial advisor, the Gordian Group, was unable to obtain financing on behalf of the Debtors on an unsecured basis or on better terms as the terms under the DIP Credit Facility.  Accordingly, the Debtor cannot obtain funds on an unsecured basis or on any other bases other than the terms of the DIP Credit Facility.

E.    **Sound Business Judgment**.  The Debtors negotiated the DIP Credit Facility at arms' length and in accordance with their sound business judgment.  The financing contemplated by the DIP Credit Facility benefits the Debtors' estates.  With the credit provided under the DIP Credit Facility, the Debtors can preserve the enterprise value of the estates.

Without the financing furnished by the DIP Credit Facility, the entire reorganization, refinancing, and/or sale effort will be jeopardized.

F. **Irreparable Harm**. Pending the Final Hearing, the Debtors will require interim and immediate use of the financing provided by the DIP Credit Facility. It is essential that the Debtors immediately stabilize their operations and pay for ordinary, post-petition operating expenses. It is anticipated that the estates will need the amounts set forth in the Approved Budget to finance its operations in chapter 11 through the end of February 2014. Absent immediate use of the Interim DIP Availability, the Debtors will be unable to pay ongoing operational expenses. Consequently, if interim relief is not obtained, the Debtors' assets will be immediately and irreparably jeopardized, to the detriment of the Debtors' estates, their creditors and other parties in interest.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1. <u>Interim Financing Approved</u>. The DIP Motion is granted on an interim basis in accordance with the terms of this Interim Order.

2. <u>Objections Overruled</u>. All objections to the DIP Motion to the extent not withdrawn or resolved, and all reservations of rights included therein, are hereby overruled.

3. <u>Authorization of the DIP Credit Facility</u>. The Debtors are expressly and immediately authorized to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Term Sheet and to execute the DIP Loan Documents, which is expressly approved and incorporated herein by reference. The Initial

Availability (defined below) is hereby approved upon the terms and conditions set forth herein and in the DIP Term Sheet and DIP Loan Documents upon execution. The DIP Obligations shall represent valid and binding obligations of the Debtors, enforceable against the Debtors and their estates in accordance with their terms.

4. <u>Authorization to Execute Documentation</u>. The Debtors are hereby authorized to execute, enter into, and deliver the DIP Documents and all instruments and documents which may be required or reasonably necessary for the performance by the Debtors under the DIP Credit Facility and the creation and perfection of the DIP Liens (as defined herein) as described in and provided for by this Interim Order and the DIP Term Sheet. Pending the execution of the DIP Documents and entry of the Final Order, the DIP Term Sheet and this Interim Order shall evidence the validity and binding effect of the Debtors' DIP Obligations and shall govern the financial accommodations to be provided to the Debtors by Lender.

5. <u>Authorization to Borrow</u>. Subject to the terms, conditions, limitations on availability set forth in the DIP Term Sheet and this Interim Order, and in order to prevent immediate and irreparable harm to the Debtors' estates, prior to the entry of the Final Order the Debtors are hereby authorized to request one or more initial advances on the Initial DIP Availability of the DIP Credit Facility from the Lender in an aggregate amount not greater than the lesser of (i) $993,825.51, or (ii) the sum total of all expenditures from the Approved Budget during the first three weeks following the Petition Date (the "<u>Interim DIP Availability</u>"). Consistent with the Lender's agreement to advance $1,479,651.02 as the "Initial DIP Availability" under the DIP Term Sheet, the Lender shall be obligated to fund to the Debtors the difference between $1,479,651.02 million and the Interim DIP Availability upon entry of a Final Order.

6.    <u>No Obligation to Extend Credit</u>. The Lender shall have no obligation to make any loan or advance under the DIP Term Sheet, unless all of the conditions precedent to the making of such extension of credit under the DIP Term Sheet and this Interim Order have been satisfied in full or waived by the Lender in its sole discretion.

7.    <u>Use of DIP Credit Facility Proceeds</u>. From and after the Petition Date, the Debtors shall use advances under the DIP Credit Facility only for the purposes specifically set forth in this Interim Order, the DIP Term Sheet, and in compliance with the Approved Budget. Notwithstanding anything to the contrary, in no event shall the proceeds of the DIP Credit Facility be used (A) for any purpose that is not permitted under the Interim Order; and (B) in a manner not consistent with the Approved Budget.

8.    <u>Superpriority Claims</u>.  Pursuant to Section 364(c)(1) of the Bankruptcy Code, but subject to the Carve-Out (as defined below), all of the DIP Obligations shall constitute allowed superpriority administrative expense claim against each of the Debtors (the "<u>DIP Superpriority Claims</u>") with priority over any and all administrative expense claims, adequate protection claims, diminution claims, and all other claims against the Debtors or their estates in the Cases, at any time existing or arising, of any kind or nature whatsoever, including without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code Sections 105, 326, 328, 330, 331, 364(c), 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114, and any other provision of the Bankruptcy Code, as provided under Section 364(c)(1) of the Bankruptcy Code; and (b) which shall at all times be senior to the rights of the Debtors and their estates, any successor trustee or other estate representative and any creditor or other party in interest to the extent permitted by law.

8

9.    <u>DIP Liens</u>.  As security for the DIP Obligations, effective and perfected upon the date of this Interim Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by Lender or its agents over any Collateral (as defined below), the following security interests and liens are hereby granted by the Debtors to Lender subject only to the Carve-Out (defined below):

(a)    pursuant to section 364(c)(1) of the Bankruptcy Code, a perfected lien on all Collateral (as defined below) with priority over any or all administrative expenses of the kind specified in sections 503 (b) or 507 (b) of the Bankruptcy Code;

(b)    pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected first-priority lien on all currently-owned or hereafter acquired assets and property, including without limitation all real and personal property, plant and equipment, accounts receivable and inventory, intellectual property, claims and causes of action (but not claims and causes of action under chapter 5 of the Bankruptcy Code or similar non-bankruptcy law), and any proceeds thereof, and any rights to receive proceeds or distributions from any affiliates or subsidiaries, of the Borrowers (the "<u>Collateral</u>"), to the extent that such Collateral is not subject to valid, perfected, and non-avoidable liens as of the commencement of the Bankruptcy Cases. Without limiting the generality of the foregoing, the Collateral shall include a fully perfected security interest in all of the existing and after acquired real and personal, tangible and intangible, assets of Borrowers, including, without limitation, all cash, cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, licensing agreements, securities (whether or not marketable), equipment, fixtures, leasehold interests and real property interests, franchise rights, patents, trademarks, tradenames, copyrights, intellectual property, general intangibles, investment property, commercial tort claims, and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds;

(c)    pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected lien on all Collateral, subject only to valid, perfected and non-avoidable liens and in favor of third parties and in existence as of the commencement of the Bankruptcy Cases, or to valid and non-avoidable liens in favor of third parties and in existence at the time of such commencement that are subsequently perfected as permitted by section 546(b) of the Bankruptcy Code (other than liens securing the Existing Indebtedness, which liens

shall be primed as set forth below by a lien pursuant to section 364(d) of the Bankruptcy Code).

(d)    pursuant to section 364(d) of the Bankruptcy Code, a senior secured perfected lien on all Collateral, senior to any and all valid, perfected and non-avoidable liens in existence as of the commencement of the Bankruptcy Cases, or to valid and non-avoidable liens in favor of third parties and in existence at the time of such commencement that are subsequently perfected as permitted by section 546(b) of the Bankruptcy Code; provided, however, that certain cash security held by SVB ("SVB LC Collateral") to secure certain exposure it may have in connection with the Duke LC (as defined below) is expressly not subject to any priming lien provided under the terms of this Interim Order; and provided further that the lien of Zuniga under the terms of that certain deed of trust on the Debtor's Kyle, Texas facility is also expressly not subject to any priming lien under the terms of this Interim Order but such collateral is expressly subject to a junior lien in favor of the DIP Lender pursuant to section 364(c)(3) as described in the immediately preceding subparagraph(c).

Lender shall not be required to marshal the Collateral, and shall be authorized to foreclose on and liquidate any of the Collateral as consistent with the DIP Term Sheet, in any manner or order in the Lender's sole and absolute discretion.

10.    <u>Perfection of DIP Liens</u>. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted to the Lender herein, including the DIP Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any lockbox or deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, or to entitle the Lender to the priorities granted herein. Notwithstanding the foregoing, the Lender is authorized to file, as it in its sole discretion deems necessary, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens, and all such financing statements,

mortgages, notices, other documents, and approvals shall be deemed to have been filed or recorded as of the Petition Date; *provided, however,* that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens. The Debtors are authorized and directed to execute and deliver promptly upon demand to the Lender all such financing statements, mortgages, notices and other documents as the Lender reasonably request. The Lender in its discretion may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

11. <u>Limitation on Charging Expenses Against Collateral</u>. Subject only to and effective upon entry of the Final Order, except to the extent of the Carve-Out (as defined below), no costs or expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral or the cash Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law without the prior written consent of Lender.

12. <u>Carve-Out</u>. Each of the liens and claims, including superpriority administrative expense claims granted to the Lender in connection with the DIP Credit Facility under this Order (and any Final Order) shall be subject only to a carve-out (the "<u>Carve-Out</u>") for the following: (a) allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6), and (b) allowed fees and expenses incurred by Court-approved estate professionals retained pursuant to sections 327 and 1103 of the Bankruptcy Code; provided, however, for each weekly advance by the Lender under the DIP Credit Facility, the Carve-Out for professional fees shall be reduced (dollar for dollar) by the amount of legal and professional fees and expenses funded

11

pursuant to the amounts set forth in the Approved Budget for the week corresponding to such advance; provided, further that the Carve-Out shall continue to apply to funds advanced to the Debtors for purposes of paying professional fees under the Approved Budget, but which have not yet been disbursed.  Nothing herein shall be construed to affect the amount of fees or expenses to which any party may otherwise be entitled, and provided further that nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement, or compensation described above.  Following an Event of Default, the Lender shall advance up to $100,000.00 for professional fees incurred by Court-approved estate professionals retained pursuant to sections 327 and 1103 of the Bankruptcy Code after such Event of Default, but only to the extent that amounts previously advanced by Lender for the purpose of paying budgeted legal or professional fees together with retainers previously paid are insufficient to satisfy the allowed amount of such post default fees.

13.    In addition, notwithstanding anything to the contrary contained in this Order, and irrespective of existing retainers, in no event shall Lender be obligated to fund any budgeted expense, including any claim to surcharge the collateral under 11 U.S.C. § 506(c) and including legal or other professional fees except at such time and in such amounts as are set forth in the Approved Budget, provided that in no event shall Lender be obligated to fund any expense if doing so would, when combined with the amounts advanced by the Lender under the DIP Credit Facility, exceed the aggregate principal amount of the DIP Credit Facility.

14.    Adequate Protection. Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, SVB and the Lender are entitled to adequate protection of their Existing Security Interests.  The Court hereby determines that the Lender's agreement to purchase the Debtors' assets for at least the amount of SVB's indebtedness and that any subsequent bidder's

bid must be at least in the amount of SVB's indebtedness (plus the Lender's pre and post-petition indebtedness) constitutes adequate protection of SVB's interest Existing Security Interests.  Further, SVB and the Lender are hereby granted the following protections:

(a)  *Adequate Protection Lien*.  As security for, and solely to the extent of any diminution in value of the Existing Security Interests, effective and perfected as of the Interim Order Entry Date and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements, a security interest in and lien on the Collateral, subject and subordinate only to the Carve-Out and the DIP Liens;

(b)  *Superpriority Claim*.  To the extent of any post-petition diminution in value of the Existing Security Interests, a superpriority administrative expense claim pursuant to section 507(b) of the Bankruptcy Code, provided however that this claim shall be junior in all respects to the Carve-Out and the claims under sections 364(c)(1)(2)(3) and (d) of the Bankruptcy Code of the Lender arising under the DIP Documents;

(c)  *Limitation on Charging Expenses Against Collateral*.  Subject only to and effective upon entry of the Final Order, except to the extent of the Carve-Out, no costs or expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral or the cash Collateral (which are subject to the Existing Security Interests) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law without the prior written consent of SVB or the Lender.

(d)  *Financial Reporting*.  The Borrowers shall continue to provide SVB and the Lender with financial and other reporting in accordance with the terms of their existing loan documents.  Any additional reporting to which Lender is entitled under this Order or the Final Order shall also be provided to SVB by the Debtors.

(e)  *Stay Relief as to the SVB LC Collateral*.  In the event that the nondebtor counterparty to that certain letter of credit by and between SVB, the Debtor, and Duke Energy (the "Duke LC") exercises its rights to draw upon the Duke LC and SVB shall be obligated and does in fact pay as a consequence of such exercise, then the automatic stay of Section 362 is hereby automatically lifted and SVB is expressly authorized to apply such funds from the SVB LC Collateral as are necessary to offset the amount drawn on the Duke LC.

15.  <u>Maturity</u>:      The DIP Loan shall mature and be immediately due and payable in

full, and the Lender shall have no further obligation to make advances under the DIP Credit

Facility nor shall SVB have any further obligation to make advances under its loan to Borrower

and the Borrowers shall have no further use of Cash Collateral or the DIP Credit Facility or any

funds previously advanced thereunder or under the SVB Loan, upon the earliest to occur of the

following events, at Lender's or SVB's sole election with respect to their respective loans:

(a)     the occurrence of a Default or an Event of Default (as defined in the DIP Loan

Documents), in which case, to the extent permitted by applicable law

    i.   the Lender and SVB has no further obligation to make advances under the DIP Credit Facility and the Borrowers shall have no use of Horizon's cash collateral or the DIP Credit Facility or any funds previously advanced thereunder;

    ii.  after five (5) business days' notice, served by overnight delivery service or email upon the Borrowers, the Borrowers' counsel, any official committee of unsecured creditors (or, if applicable, their counsel), and the United States Trustee (the "Required Notice"), all of the indebtedness (including without limitation, the Pre-Petition Lender Debt and the amount of the DIP Availability advanced to the Debtors) to the Lender and SVB shall become immediately due and payable;

    iii. after the Required Notice, the Automatic Stay of Section 362 of the Code shall be automatically and completely vacated as to the Lender and SVB without further order of the Bankruptcy Court; and

    iv.  after the Required Notice, the Lender and SVB, without further notice, hearing, or approval of the Bankruptcy Court, shall be authorized, at its option, to take any and all actions, and remedies that the Lender or SVB may deem appropriate to proceed against, take possession of, protect, and realize upon the collateral and any other property of the estates of the Borrowers upon which the Lender or SVB has been or may hereafter be granted liens and security interests to obtain repayment of the indebtedness to the Lender and SVB.

    v.   The Lender and SVB shall have the relief set forth above unless the Borrowers, or other party in interest, contest the occurrence of an Event of Default and the Bankruptcy Court determines the same prior to the expiration of the five (5) business days after the Required Notice

(b)     the indefeasible payment in full of the Obligations owing to the Lender;

(c)     the failure of the Debtor to obtain the approval of the Back Up Sale Transaction (as defined below) at the hearing scheduled for February 21, 2014 at 1:30 pm;

(d)     March 4, 2014 (the "Horizon Sale Date"), unless, on or before February 28, 2014, the Debtor shall have obtained an order from the Bankruptcy Court (i) approving procedures for a sale of the Debtors' assets to a specifically identified third party other than the Lender (the "Substitute Stalking Horse Bidder") for a cash purchase price greater than the sum of all pre and post bankruptcy indebtedness owed to Lender and amounts owed to SVB and otherwise upon terms and conditions acceptable to Lender, (ii) establishing rules for an auction of substantially all of the assets of the Debtors to occur no later than March 31, 2014 (the "Auction"), (iii) setting a Final Sale Hearing (as defined below) to approve the results of such auction not later than April 4, 2014, and (iv) requiring an outside closing date of not later than April 14, 2014;

(e)     March 31, 2014 if no Auction shall have occurred prior to that date;

(f)     April 4, 2014, if no Final Sale Hearing (as defined below) shall have occurred on or prior to that date;

(g)     the sale of Borrowers, collectively or individually, to any purchaser; and

 (h)     April 14, 2014.

Upon the expiration of the Term, all outstanding principal and interest incurred or advanced post-petition and pre-petition shall be due and payable.

Notwithstanding (d) - (h) above, the DIP Loan shall not mature if on or before February 28, 2014, the Borrowers obtain a written financing commitment from a third party lender (the "Substitute DIP Lender") whose liens, claims, and security interests are junior to the liens, claims, and security interests securing the DIP Loan and the Existing Security Interests held by

SVB and the Lender (in its capacity as pre-petition Lender to the Debtors); provided that such Substitute DIP Lender must provide funding sufficient for the Debtors to operate their businesses in accordance with the Approved Budget commencing not later than March 4, 2014.  In the event that the Debtors obtain such a Substitute DIP Lender, the dates in paragraphs (d) - (h) above shall be extended by 30 days, but the Lender shall have no obligation to advance funds after March 4, 2014 nor in excess of the Approved Budget under any circumstances whatsoever under the terms of the DIP Credit Facility.

16.     <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order</u>. The Lender has acted in good faith in connection with this Interim Order and their reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the Lender is entitled to the protections provided in Section 364(e) of the Bankruptcy Code.  Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or any lien, claim or priority authorized or created hereby.  Any liens or claims granted to the Lender hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

17.     <u>Proofs of Claim</u>. The Lender will not be required to file proofs of claim in any of the Cases for any claim allowed herein in relation to the DIP Credit Facility.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in the to the

contrary, the Lender is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim in the Cases for any claim allowed herein in relation to the DIP Credit Facility.

18.     Limitations on the DIP Credit Facility and the Collateral. The DIP Credit Facility and the Collateral may not be used in connection with: (a) preventing, hindering, or delaying any of the Lender's and SVB's enforcement or realization upon any of the Collateral once an Event of Default has occurred; (b) using or seeking to use any Cash Collateral or selling or otherwise disposing of the Collateral without the prior written consent of the Lender; (c) using or seeking to use any insurance proceeds constituting Collateral without the prior written consent of the Lender and SVB; (d) incurring indebtedness without the prior written consent of the Lender and SVB, except to the extent permitted under the DIP Term Sheet; (e) objecting or challenging in any way any claims, liens, Collateral, as the case may be, held by or on behalf of the Lender and SVB; (f) asserting, commencing or prosecuting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Lender and SVB or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; or (g) prosecuting an objection to, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, or any other rights or interests of the Lender and SVB.

19.     Effect of Stipulations on Third Parties.  Each stipulation, admission, and agreement contained in this Interim Order shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) under all circumstances and for all purposes, and the Debtors are

deemed to have irrevocably waived and relinquished all claims, defenses and causes of action against the Lender and SVB as of the date of entry of this Interim Order.  Notwithstanding the foregoing, with respect only to the Lender's pre-petition loans and claims and the Existing Security Interests securing such loans and claims, any Committee and/or third parties shall have forty-six (46) days from the date of this Interim Order to: (i) object to the amount, validity, and/or priority of Lender's Existing Indebtedness and the liens or claims securing same; or (ii) file any affirmative claims or causes of action (including any avoidance claims) against Lender. Failure to do so within forty-six (46) days of the Interim Order shall be deemed a waiver of any and all such objections, claims and causes of action and the Existing Indebtedness shall be an allowed claim for all purposes.

20.     <u>Modification of Automatic Stay</u>.  The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified solely to the extent necessary to authorize the Debtors to pay, and Lender to retain and apply payments made, in accordance with the terms of this Interim Order and the DIP Term Sheet.

21.     <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

22.     <u>Rights Preserved</u>. Entry of this Interim Order is without prejudice to any and all rights of any official committees appointed in these Cases and any other party in interest with respect to the terms and approval of the Final Order and any other position which such parties or official committees deem appropriate to raise in the Case.

23.     <u>No Waiver by Failure to Seek Relief</u>. The failure of the Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order, the DIP Term Sheet, or

applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise.

24.     <u>Binding Effect of Interim Order</u>. Immediately upon execution by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the Lender, all other creditors of the Debtors, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Cases, or upon dismissal of the Case.

25.     <u>No Modification of Interim Order</u>. Until and unless the DIP Obligations have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Credit Facility which survive such discharge by their terms) and all commitments to extend credit under the DIP Credit Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not, without the Lender's prior written consent, seek or consent to, directly or indirectly: (a) any modification, stay, vacatur or amendment to this Interim Order; (b) the granting of any priority claim or administrative expense against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in Sections 503(b), 506(c), 507(a), or 507(b) of the Bankruptcy Code) in any of the Case, equal or superior to the DIP Superpriority Claim, (c) the entry of any order allowing use of cash collateral resulting from Collateral; or (d) the granting any lien on any of the Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Term Sheet. The Debtor irrevocably waives any right to seek any amendment, modification or extension of this Interim Order without the Lender's prior written consent, and no such Lender consent shall be implied by any other action, inaction or acquiescence of the Lender.

26.    <u>Headings</u>. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

27.    <u>Survival</u>.  The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the Lender pursuant to this Interim Order and/or the DIP Term Sheet, notwithstanding the entry of any such order, shall continue in the Case, or following dismissal of the Case, and shall maintain their priority as provided by this Interim Order until all the DIP Obligations, pursuant to the DIP Term Sheet and this Interim Order, have been indefeasibly paid in full (such payment being without prejudice to any terms or provisions contained in the DIP Credit Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Credit Facility are terminated.

28.    <u>Final Hearing</u>. The Final Hearing to consider entry of the Final Order and final approval of the DIP Credit Facility is scheduled for 1:30 p.m. on February 21, 2014, at the United States Bankruptcy Court for the Western District of Texas, Austin Division.  On or before January 27, 2014, the Debtors shall serve, by electronic filing and/or by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with copies of this Interim Order, the proposed Final Order and the DIP Motion, on the parties having been given notice of the Interim Hearing as specified above, including but not limited to; (i) the U.S. Trustee; (ii) the Internal Revenue Service; (iii) the state and federal environmental protection agencies, (iv) creditors holding the thirty (30) largest claims against the Debtors on a consolidated basis; (v) parties asserting liens against the Collateral; (vi) all taxing authorities; (vii) parties requesting notice in these Cases; and (viii) counsel to the Lender.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of

the Court no later than on February 19, 2014, at 4:00 pm prevailing Central Time, which objections shall be served so as to be received on or before such date by: (1) counsel to the Debtors; (ii) the U.S. Trustee; and (iii) counsel to the Lender.

29.     <u>Bankruptcy Rule 7052</u>. The Findings and Conclusions set forth in this Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

30.     <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

###

**JORDAN, HYDEN, WOMBLE, CULBRETH & HOLZER, P.C.**

<u>/s/ Shelby A. Jordan</u>
Shelby A. Jordan (Texas Bar No. 11016700)
Nathaniel Peter Holzer (Texas Bar No. 00793971)
Antonio Ortiz (Texas Bar No. 240748390)
500 North Shoreline Boulevard, Suite 900
Corpus Christi, Texas 78401
Telephone:  361.884.5678
Facsimile:  361.888.5555
Email:  sjordan@jhwclaw.com
          pholzer@jhwclaw.com
          aortiz@jhwclaw.com
**PROPOSED ATTORNEYS FOR DEBTORS-IN-POSSESSION**

<u>/s/ A. Lee Hogewood, III</u>
A. Lee Hogewood, III
N.C. State Bar No. 17451
K&L Gates LLP
P.O. Box 17047 (27619-7047)
4350 Lassiter at North Hills Avenue, Suite 300
Raleigh, NC 27609
Telephone: (919) 743-7306
Facsimile: (919) 516-2006
Email: lee.hogewood@klgates.com
 **ATTORNEYS FOR HORIZON**

21

**Exhibit A**

[See attached Approved Budget]

| Week ending | Jan22-26 | Jan27-Feb2 | Feb3-9 | Feb10-16 | Feb17-23 | Feb24-28 | Mar | Mar30-Apr6 | Apr7-Apr 13 | Apr13-15 | Apr16-20 | Apr21-30 | Apr | May | Jun | Jul |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beg Cash | $ 3.92 | $ (623.51) | $ (736.21) | $ (1,005.42) | $ (1,162.73) | $ (1,373.70) | $ (1,475.13) | $ (2,236.43) | $ (2,519.88) | $ (2,622.00) | $ (2,764.86) | $ (2,963.82) | $ (2,236.43) | $ (3,183.55) | $ (3,529.65) | $ (3,929.78) |
| **Contract Receipts** | | | | | | | | | | | | | | | | |
| Awarded project Receipts | $ - | | | | | | $ - | | | | | | $ - | $ - | $ - | $ - |
| O&M Receipts | | | | | | 42.68 | $ - | | | | | | $ - | 106.28 | $ - | $ - |
| Total Receipts | $ - | $ - | $ - | $ - | $ - | $ 42.68 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 106.28 | $ - | $ - |
| Cash Available | $ 3.92 | $ (623.51) | $ (736.21) | $ (1,005.42) | $ (1,162.73) | $ (1,331.02) | $ (1,475.13) | $ (2,236.43) | $ (2,519.88) | $ (2,622.00) | $ (2,764.86) | $ (2,963.82) | $ (2,236.43) | $ (3,077.27) | $ (3,529.65) | $ (3,929.78) |
| **Recurring Monthly Expenses** | | | | | | | | | | | | | | | | |
| Payroll | $ 140.79 | | $ 113.60 | | $ 98.16 | | $ 196.32 | 98.16 | | | $ 98.16 | | $ 196.32 | $ 196.32 | $ 196.32 | $ 196.32 |
| Payroll - accrual | | | | $ - | | 98.16 | $ (98.16) | | | $ 117.79 | $ (117.79) | 127.61 | 127.61 | | | |
| Interim employee incentive | | | | | | | $ 155.00 | | | | | | | | | |
| Insurance | $ 209.88 | | | | 64.16 | | 73.16 | | | | 125.76 | | 125.76 | 64.16 | 73.16 | 125.76 |
| Horizon Finance Fees | | $ 37.50 | | $ 37.50 | | | $ - | | | | | | $ - | $ - | $ - | $ - |
| SVB Debt Service | $ 89.83 | | $ 89.83 | | | $ - | $ 89.83 | 73.33 | $ - | | | | 73.33 | $ - | $ - | $ - |
| Legal | $ 105.00 | $ 72.00 | $ 44.00 | $ 94.00 | $ 44.00 | 44.00 | $ 277.00 | 91.25 | 91.25 | $ - | 91.25 | 91.25 | $ 365.00 | $ 140.00 | $ 70.00 | $ - |
| Other estate professionals | | | | | | | $ 10.00 | | 10.00 | | | | $ 10.00 | | | |
| Travel | $ 1.75 | $ 0.70 | $ 0.70 | $ 0.70 | $ 0.70 | $ 0.70 | $ 3.50 | 0.88 | 0.88 | | $ 0.88 | | $ 3.50 | $ 7.50 | $ 7.50 | $ 7.50 |
| Rent | 19.83 | | $ 19.83 | | | | 19.83 | 19.83 | | | | | 19.83 | 19.83 | 19.83 | 19.83 |
| Utilities | 9.60 | | | $ 9.60 | | | 9.60 | | | | 10.80 | | 10.80 | 9.60 | 9.60 | 10.80 |
| Teleco | 14.27 | | | $ 14.27 | | | 14.27 | | | | 14.27 | | 14.27 | 14.27 | 14.27 | 14.27 |
| Taxes | 22.48 | | | $ - | | | 9.45 | | | | | | $ - | 9.45 | $ - | $ - |
| Grove Operating exp | $ - | | | | $ - | | $ - | | | | | | $ - | $ - | $ - | $ - |
| Consultants | $ - | | | | | | $ - | | | | | | $ - | $ - | $ - | $ - |
| Equip Rentals | 1.50 | | | | $ - | $ 2.70 | 1.50 | | | $ 0.70 | | | 0.70 | 0.70 | $ - | $ - |
| Other Vendors/exp | 12.50 | $ 2.50 | $ 1.25 | $ 1.25 | $ 1.25 | $ 1.25 | 5.00 | | | | | $ 0.88 | 5.00 | 5.00 | 5.00 | 5.00 |
| Monthly Expenses | $ 627.43 | $ 112.70 | $ 269.21 | $ 157.32 | $ 210.97 | $ 144.11 | $ 761.30 | $ 283.45 | $ 102.13 | $ 142.86 | $ 198.96 | $ 219.73 | $ 947.12 | $ 452.38 | $ 400.13 | $ 374.48 |
| Cash Before AP Paydown | $ (623.51) | $ (736.21) | $ (1,005.42) | $ (1,162.73) | $ (1,373.70) | $ (1,475.13) | $ (2,236.43) | $ (2,519.88) | $ (2,622.00) | $ (2,764.86) | $ (2,963.82) | $ (3,183.55) | $ (3,183.55) | $ (3,529.65) | $ (3,929.78) | $ (4,304.26) |
| **Critical Vendor Payments** | | | | | | | | | | | | | | | | |
| Awarded Project Costs | $ - | | | | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Past Due AP | $ - | | | | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Ending Cash | $ (623.51) | $ (736.21) | $ (1,005.42) | $ (1,162.73) | $ (1,373.70) | $ (1,475.13) | $ (2,236.43) | $ (2,519.88) | $ (2,622.00) | $ (2,764.86) | $ (2,963.82) | $ (3,183.55) | $ (3,183.55) | $ (3,529.65) | $ (3,929.78) | $ (4,304.26) |

$   -

(1) Gordian professional fees due and payable upon completion of transaction, per engagement letter, subject to court approval.

| 30 Day DIP Cash Needs | | |
|---|---|---|
| Cash @ 1/20 | $ | 3.9 |
| Receipts | $ | 42.7 |
| Payroll | $ | (450.7) |
| Insurance | $ | (274.0) |
| Legal | $ | (403.0) |
| Rent/Utilities/Telcom | $ | (87.4) |
| Horizon Fees | $ | (75.0) |
| Taxes | $ | (22.5) |
| Grove | $ | - |
| Other | $ | (209.1) |
| | | |
| 30 Day Cash needed | $ | (1,475.1) |
| 30 Day Budget | $ | 1,479.7 |
| | | |
| Cash needed thru 4/15 | $ | (2,764.9) |
| Budget thru 4/15 | $ | 2,842.8 |